UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ASHLEY OSUCHA
2314 Chick Road
Darien, New York 14040
                                        Plaintiff,


                v.

                                                        **COMPLAINT**

ALDEN STATE BANK
13216 Broadway                                          Civ. No.:
Alden, New York 14004,


RICHARD D. KOELBL
13070 Main Street
Alden, New York 14004,


JOHN KOELBL
1639 Homecourt
Alden, New York 14004
                                        Defendants.


_____


        Plaintiff, ASHLEY OSUCHA, by and through her attorneys, GRECO TRAPP, PLLC, for

her Complaint against Defendants ALDEN STATE BANK, RICHARD D. KOELBL, and JOHN

KOELBL, respectfully states:

### JURISDICTION AND VENUE

        1.      This action is authorized by and instituted under the Title VII of the Civil Rights

Act of 1964, as amended 42 U.S.C. § 2000e *et seq*.  Plaintiff invokes the jurisdiction of this

Court pursuant to U.S.C. §§ 1331, 1337, and 1343(4).  The matter in controversy arises under an

Act of Congress regulating commerce and relating to sex discrimination and it exceeds the sum

and value of $10,000.

2.     The venue of this action is properly placed in the Western District of New York pursuant to 28 U.S.C. § 1391.  Plaintiff, ASHLEY OSUCHA, resides in this District.  Upon information and belief, Defendant, ALDEN STATE BANK, was and still is doing business in this District; Defendant RICHARD D. KOELBL resides in this District; Defendant JOHN KOELBL resides in this District; and the events giving rise to Plaintiff, ASHLEY OSUCHA's claims occurred in this District.

**PARTIES**

3.     Plaintiff, ASHLEY OSUCHA (hereinafter "MS. OSUCHA"), is a female citizen of the United States of America and resides in the Town of Darien, County of Genesee, and State of New York.

4.     At all relevant times, MS. OSUCHA was an "employee" as defined in § 701(f) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(f). She was also an "employee" as defined in the New York State Human Rights Law, Executive Law § 290 *et. seq.*

5.     Upon information and belief, Defendant ALDEN STATE BANK, (hereinafter "the BANK") is a bank chartered by New York State and is licensed and authorized to do business in New York State.  At all times herein relevant, the BANK maintained a place of business at 13216 Broadway, Alden, New York 14004.

6.     At all relevant times, the BANK was and still is an "employer" as defined in § 701(b) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(b), and as defined in the New York State Human Rights Law, Executive Law § 290 *et. seq.*

7.     The BANK has continuously been engaged in an industry affecting commerce within the meaning of § 701(h) of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e(h).

8.      Defendant RICHARD D. KOELBL is the President/Chief Executive Officer of the BANK as well as Chairman of the Board of Directors.  He owns a large interest in the BANK and is the highest level management employee of the BANK.

9.      Defendant JOHN KOELBL is the Vice President/Chief Lending Officer of the BANK and a member of the Board of Directors.  He owns a large interest in the BANK and is the second highest level management employee of the BANK.

## STATEMENT OF FACTS

10.     MS. OSUCHA is a female whose date of birth is March 17, 1989.

11.     Upon information and belief, the BANK is a New York State chartered bank with its principal place of business in Alden, New York.  The BANK employs approximately 65 individuals.

12.      On or about May 21, 2008, MS. OSUCHA became employed by the Bank as a teller.  In 2012, MS. OSUCHA earned a promotion to the position of Head Teller.

13.     When she was first hired, MS. OSUCHA's immediate supervisor was the Head Teller Supervisor, Sylvia Sweet, and thereafter Patricia Aldridge.  The Head Teller Supervisor reported to Robin Maier, Mortgage Loan Officer, who reported to: Defendant JOHN KOELBL, Vice President and Chief Lending Officer of the BANK and  member of the Board of Directors of the BANK; Tracy McMaster, Assistant Branch Manager; and Colleen Pautler, Assistant Vice President, who reported to Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer; and Carolyn Sue Aldinger who reported to Defendant RICHARD D. KOELBL, President and Chief Executive Officer of the BANK and Chairman of the Board of the BANK.

14.     Throughout her employment, MS. OSUCHA's job performance was always more than satisfactory and she has received periodic raises.

15.     Defendant Richard D. KOELBL is an approximately 66 year old male management employee of the BANK, holding the position of President/Chief Executive Officer of the BANK as well as Chairman of the Board of Directors.  He owns a large interest in the BANK and is the highest level management employee.  As President/Chief Executive Officer, he had the power to hire and fire and do more than carry out personnel decisions made by others.  His office is located at 13216 Broadway, Alden, New York 14004.  As set forth below, he aided and abetted in the discrimination and harassment by participating in the discrimination and harassment.

16.     Defendant JOHN KOELBL is an approximately 61 year old male management employee of the BANK, holding the position of Vice President/Chief Lending Officer of the Bank and a member of the Board of Directors.  He owns a large interest in the BANK and is the second highest level management employee of the BANK.  As Vice President/Chief Lending Officer, he had the power to hire and fire and do more than carry out personnel decisions made by others.  His office is located at 13216 Broadway, Alden, New York 14004.  As set forth below, he aided and abetted in the discrimination and harassment by participating in the discrimination and harassment.

17.     From on or about 2011 until sometime in August 2015, approximately a few times a week Defendant JOHN KOELBL would tell MS. OSUCHA:  "You're beautiful"; "Wow"; or would mouth the word "Wow".  This occurred in the Head Teller Room, on the Teller Line, or if MS. OSUCHA went to his office for anything.  MS. OSUCHA would not

respond and was offended by Defendant JOHN KOELBL's conduct.

18.     From on or about 2011 until sometime in August 2015, approximately a couple times a week Defendants JOHN KOELBL and RICHARD D. KOELBL would look MS. OSUCHA up and down.  If MS. OSUCHA wore a skirt or dress, this conduct occurred more frequently.  MS. OSUCHA was offended by Defendants RICHARD D. KOELBL and JOHN KOELBL's conduct.

19.     From on or about 2011 until sometime in August 2015, Defendants JOHN KOELBL and RICHARD D. KOELBL would watch MS. OSUCHA as she walked away, making her feel like their eyes were fixed on her.  MS. OSUCHA was offended by Defendants RICHARD D. KOELBL and JOHN KOELBL's conduct.

20.     Beginning in or about 2012 until sometime in July 2015, Defendant JOHN KOELBL asked MS. OSUCHA out to dinner approximately once a month.  MS. OSUCHA repeatedly refused the invitation and was offended by Defendant JOHN KOELBL's conduct.

21.     During the Summer of 2012, Defendant RICHARD D. KOELBL came in the Head Teller Room.  While there, he moved forward, put his foot in between MS. OSUCHA's legs as she was standing up while wearing a skirt, and said that maybe he could see up her skirt with his shiny shoes.  MS. OSUCHA backed up away from him and was offended by Defendant RICHARD D. KOELBL's conduct.

22.     During late 2012 while MS. OSUCHA was working downstairs at the BANK, Defendant JOHN KOELBL went downstairs, grabbed her arm and tried to kiss her.  MS. OSUCHA ran away from him up the stairs.  She was offended by this conduct and since then, she will not go to the basement alone because she is afraid of being trapped alone in the basement with Defendant JOHN KOELBL.

23.     Following the incident in late 2012, MS. OSUCHA told Sylvia Sweet, her Head Teller Supervisor, that she refused to do mandatory online classes downstairs because Defendants JOHN KOELBL and RICHARD D. KOELBL could come in the room where she was alone and make her uncomfortable.

24.     During the Spring of 2013, Defendant RICHARD D. KOELBL came into the Head Teller Room and told MS. OSUCHA that he has money and he has what she needs and she has what he wants.  MS. OSUCHA ignored him and was offended by Defendant RICHARD D. KOELBL's conduct.

25.     During the Summer of 2013 Defendant RICHARD D. KOELBL said to MS. OSUCHA while she was in his office on a work related matter that he has money and he has what she needs and she has what he wants.  MS. OSUCHA walked out of Defendant RICHARD D. KOELBL's office.  She was offended by Defendant RICHARD D. KOELBL's conduct.

26.     During the Winter of 2013, MS. OSUCHA purchased and wore a purple sweater dress to work.  When she wore it Defendant RICHARD D. KOELBL told her that it clung to her in all the right places.  After wearing the purple sweater dress approximately four times, MS. OSUCHA stopped wearing it, because his comments made her uncomfortable wearing it and she was offended by his conduct.

27.     During the Spring of 2014 Defendant JOHN KOELBL stood behind MS. OSUCHA while she was standing behind the reception desk wearing a skirt and said he would like to lick her from her ankles and work his way up.  Defendant JOHN KOELBL then reached as if to get something off of her shirt and MS. OSUCHA told him not to touch her.  She was

offended by his conduct.

28.     In or about September 2014, MS. OSUCHA was being trained as a Proof Operator.  As a result, she would have been one of the last employees at the end of the night to leave the BANK.  MS. OSUCHA told Robin Maier, Teller Supervisor, that she was not comfortable if Defendants RICHARD D. KOELBL and JOHN KOELBL knew she was going to be alone at night because they would also be there and bother her.  In response, Ms. Maier waited at the BANK's door while MS. OSUCHA went to her car.  While waiting at the door, Ms. Maier heard both Defendants RICHARD D. KOELBL and JOHN KOELBL wolf whistle at MS. OSUCHA.  MS. OSUCHA was offended by Defendants RICHARD D. KOELBL and JOHN KOELBL's conduct.

29.     During the Fall of 2014, on a day that the BANK employees were allowed to wear jeans, Defendant JOHN KOELBL told MS. OSUCHA while she was sitting in the Head Teller Room that he loved how the jeans clung to her body and he would love to peel them off of her.  MS. OSUCHA was offended by Defendant JOHN KOELBL's conduct.

30.     In early 2015, Defendant JOHN KOELBL said in the presence of Defendant RICHARD D. KOELBL that they are going to harass MS. OSUCHA if she started looking better with age.  MS. OSUCHA said "Don't you harass me already?"  Defendant RICHARD D. KOELBL replied that it is only harassment if you don't like it.  MS. OSUCHA was disgusted and walked out.  MS. OSUCHA was offended by Defendants RICHARD D. KOELBL and JOHN KOELBL's conduct.

31.     During the Winter of 2015, MS. OSUCHA was outside the BANK after work scraping snow off her car getting ready to drive home.  Defendant JOHN KOELBL was walking toward the BANK and told MS. OSUCHA that if he and MS. OSUCHA lived together

he could scrape the snow off the car and she could reward him afterwards.  MS. OSUCHA

stopped brushing the snow off her car, got in her car and drove away.  MS. OSUCHA was

offended by Defendant JOHN KOELBL's conduct.

32.      During the Winter of 2015, on several occasions Defendant JOHN KOELBL

asked Jaimie Hey, an approximately 22 year old female employee of the BANK who held the

position of Head Teller, to send him naked pictures of her.  Jaimie Hey told MS. OSUCHA she

was offended by Defendant JOHN KOELBL's conduct.  When MS. OSUCHA learned of this

conduct she too was offended by it.

33.      During March of 2015, when MS. OSUCHA was in the Head Teller Room,

Defendant JOHN KOELBL kept coming in and out and would not leave her alone.  She was

offended by his conduct.  On one occasion on this day, MS. OSUCHA got up and left the Head

Teller Room and went into the vault.  When she returned Defendant JOHN KOELBL was not

there.  When Defendant JOHN KOELBL came back into the Head Teller Room, her head was

resting on her hand and Defendant JOHN KOELBL said to her "Where your arm is I dropped

my pants and had my wang out when you were away."  MS. OSUCHA shook her head "No"

and kept working.  She was offended by Defendant JOHN KOELBL's conduct.

34.      During the Spring of 2015, MS. OSUCHA and Jaimie Hey were in the Head

Teller Room.  Defendant JOHN KOELBL came in because MS. OSUCHA needed his initials

on a document.  Defendant JOHN KOELBL grabbed her hand.  MS. OSUCHA said "Don't

touch me."  Defendant JOHN KOELBL said "If I was going to touch you I wouldn't touch you

there."  Defendant JOHN KOELBL left and then came back in the room and said "I can't

believe I just said that in front of a witness."  MS. OSUCHA was offended by JOHN

KOELBL's conduct.  When she returned to work following her lunch break, Jaimie Hey said

that Defendant JOHN KOELBL left a bag of sponge candy for each of them.

35.     In or about April 2015, MS. OSUCHA was walking out of the BANK and walking to her car on her lunch break.  Defendant RICHARD D. KOELBL was walking back into the BANK from lunch.  Defendant RICHARD D. KOELBL asked MS. OSUCHA if JOHN KOELBL was naked in the backseat of her car would she leave or call the cops?  MS. OSUCHA replied "Good thing I keep my doors locked."  She got in her car and left.  She was offended by Defendant RICHARD D. KOELBL's conduct.

36.     In or about May/June 2015 while she was standing behind the reception desk, Defendant JOHN KOELBL said to MS. OSUCHA that Defendant RICHARD D. KOELBL saw Defendant JOHN KOELBL in workout clothes and asked JOHN KOELBL if he was running the track or running in the streets.  Defendant JOHN KOELBL said he was running in the woods so he could whack off.  Defendant RICHARD D. KOELBL asked JOHN KOELBL if MS. OSUCHA was working that day.  MS. OSUCHA responded sarcastically that she was sure that this was Defendant RICHARD D. KOELBL's first question.  MS. OSUCHA was offended by the conduct of Defendants RICHARD D. KOELBL and JOHN KOELBL.

37.     In or about June 2015 while MS. OSUCHA was in the Head Teller Room, Defendant JOHN KOELBL stood at the door and said "Hurry up and flash me, Sue Aldinger's computer screen is off."  MS. OSUCHA said "No, that's not going to happen."  MS. OSUCHA was offended by Defendant JOHN KOELBL's conduct.

38.     On a few occasions in 2014 and 2015, Defendant RICHARD D. KOELBL, when about to sign a check, suggestively asked MS. OSUCHA if she would prefer "Top" or "Bottom".  Each time she ignored his sexual innuendo and replied that if it is a large check a senior officer signs the top line; if it is a small check only MS. OSUCHA signs the top line.

She was offended by Defendant RICHARD D. KOELBL's conduct.

39.     Approximately monthly in 2015 until September 2015, Defendant JOHN

KOELBL would hold a dinner within his department.  Although she was not in Defendant

JOHN KOELBL's department, he would ask MS. OSUCHA to go to dinner.  She refused his

repeated offers.  She was offended by Defendant JOHN KOELBL's conduct.

40.     In June 2015 a position as Home Equity Representative opened at the BANK.

This position directly reported to Defendant JOHN KOELBL.  Robin Maier and Carolyn Sue

Aldinger, Officers of the BANK, asked MS. OSUCHA if she wanted to apply for the position.

MS. OSUCHA did not apply because she was uncomfortable and fearful working for Defendant

JOHN KOELBL due to his inappropriate conduct toward her.   MS. OSUCHA was offended by

Defendant JOHN KOELBL's conduct.

41.     On or about June 24, 2015, MS. OSUCHA was walking through the BANK

parking lot on her way home from her Grandmother's house.  Defendant JOHN KOELBL was

in his car, saw her, drove up to her and asked if he could pick her up and take her out that night.

MS. OSUCHA said no and continued to walk home.

42.     On or about June 26, 2015, when MS. OSUCHA was on her way home from the

Alden Fireman Carnival, Defendant JOHN KOELBL stopped her and asked her if she wanted

to go somewhere for a drink.  Although she said no, he kept asking her the same question.

Finally, MS. OSUCHA's brother, who was ahead of her, turned around and told Defendant

JOHN KOELBL "No" - she was going home with her brother.  She was offended by Defendant

JOHN KOELBL's conduct.

43.     In July 2015 while she was at her station in the Teller Line, Defendant JOHN

KOELBL told MS. OSUCHA – "I thought Brooke [referring to MS. OSUCHA's five year old

daughter] said the other day that she has a good judge of character and I'm the one for you – I know I may act like I only want to sleep with you but I really like you". MS. OSUCHA replied "No, Brooke wouldn't say anything like that– She is only 5 years old." MS. OSUCHA was offended by Defendant JOHN KOELBL's conduct.

44.     In or about July 2015, Defendant JOHN KOELBL said to MS. OSUCHA that he saw that she was in the newspaper for flashing a cop. MS. OSUCHA said that she wasn't. She was offended by Defendant JOHN KOELBL's conduct.

45.     Defendant JOHN KOELBL has followed MS. OSUCHA home a number of times. The last time was on July 4, 2015. MS. OSUCHA was driving home that day and noticed Defendant JOHN KOELBL was behind her car in his car. After she pulled into her parking spot and got her daughter out of the car, she noticed that Defendant JOHN KOELBL had pulled his car in behind hers. He asked her if she wanted to do something. MS. OSUCHA asked him why he wasn't spending the day with his family and he said that they all had other plans. MS. OSUCHA told him that she had plans and went into her apartment. MS. OSUCHA did not leave her apartment that day in fear that Defendant JOHN KOELBL would see her or would be waiting for her outside her apartment. MS. OSUCHA was offended by Defendant JOHN KOELBL's conduct.

46.     Jaimie Hey told MS. OSUCHA that in July/August 2015, Defendant JOHN KOELBL came into the Head Teller Room and asked Jaimie Hey what kind of alcohol beverages she liked. When she replied that she liked "anything fruity" Defendant JOHN KOELBL responded that he would like to eat fruit off of her naked body. Jaimie Hey was offended by Defendant JOHN KOELBL's comment. When MS. OSUCHA learned of such conduct she too was offended by it.

47.     On or about August 6, 2015, while MS. OSUCHA was in Colleen Pautler's office in the presence of Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer, Defendant RICHARD D. KOELBL walked in and said that Defendant JOHN KOELBL called Defendant RICHARD D. KOELBL the night before and asked if he wanted to go out for a drink.  Defendant RICHARD D. KOELBL responded that Ashely Osucha is coming over to go swimming with me.  Defendant JOHN KOELBL said "Okay, I'll be right over."  MS. OSUCHA was offended by Defendant RICHARD D. KOELBL's conduct and looked at Colleen Pautler, and shook her head.

48.     Ms. Aldinger walked out appearing upset at what had occurred.  Defendant RICHARD D. KOELBL said to Ms. Pautler and MS. OSUCHA that Defendant JOHN KOELBL and he always joke about MS. OSUCHA and it's in good fun.  MS. OSUCHA did not respond. MS. OSUCHA was offended by Defendants RICHARD D. KOELBL and JOHN KOELBL's conduct.

49.     When Defendant RICHARD D. KOELBL left, Ms. Aldinger returned and asked MS. OSUCHA what that exchange was about.  MS. OSUCHA told Ms. Aldinger that it happens all the time.  Ms. Aldinger told MS. OSUCHA to get a notebook and document what was said to her.

50.     The next day Ms. Aldinger told MS. OSUCHA that Defendant RICHARD D. KOELBL's comments were inappropriate and he said he would apologize.  Defendant RICHARD D. KOELBL never apologized to MS. OSUCHA.

51.     On or about August 7, 2015, Defendant JOHN KOELBL asked MS. OSUCHA if she wanted to go out with him the following Wednesday, August 12, 2015.  She said "No." MS. OSUCHA was offended by such conduct.

12

52.     Upon information and belief on or about August 13, 2015, Kaitlyn Chadbourne complained to Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer regarding the sexual harassment and hostile environment created by Defendants RICHARD D. KOELBL and JOHN KOELBL.

53.     On or about August 17, 2015, MS. OSUCHA met with Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer and reported the sexual harassment and hostile work environment created by Defendants RICHARD D. KOELBL and JOHN KOELBL.   MS. OSUCHA told Ms. Aldinger that she was fearful for her job because of the ownership and management positions of Defendants RICHARD D. KOELBL and JOHN KOELBL at the BANK and their repeated refusal to stop their conduct.

54.     MS. OSUCHA was questioned as a part of an investigation.  She complained of sexual harassment by Defendants RICHARD D. KOELBL and JOHN KOELBL and that she was unable to advance at the BANK to the position of Home Equity Representative because of their conduct.  MS. OSUCHA also reported that there were other victims of sexual harassment and discrimination at the BANK; some of the female employees who were sexually harassed by Defendants RICHARD D. KOELBL and/or JOHN KOELBL were not interviewed; and some of the females were afraid to come forward because they believed that nothing would be done by the Board of Directors of the BANK, in light of the ownership and management positions of Defendants RICHARD D. KOELBL and JOHN KOELBL.  MS. OSUCHA was told in the future to go to Hilde Neubauer, Esq., Vice President/In House Counsel/Compliance Officer not Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer, to report any inappropriate conduct of Defendants RICHARD D. KOELBL and/or JOHN KOELBL.

55.     Specifically, MS. OSUCHA was aware of and reported that female employees, Julie Osucha, (approximately 55 years old) was a victim of sexual harassment by Defendants RICHARD D. KOELBL and JOHN KOELBL and Jaimie Hey (approximately 26 years old) was a victim of sexual harassment by Defendant JOHN KOELBL.

56.     On or about September 3, 2015, Jaimie Hey told MS. OSUCHA that she told Ms. Aldinger she wanted to file a sexual harassment complaint against Defendant JOHN KOELBL.

57.     Up to November 2015, it had been the practice of the BANK to give employee evaluations for the year in late November each year along with advising employees of their raises effective January 1st of the following year.

58.     On or about November 9, 2015, Carolyn Sue Aldinger, Vice President/Branch Administrator/Human Resources/Security Officer was terminated from the BANK.

59.     On November 13, 2015, MS. OSUCHA wore her purple sweater dress to work. When Defendant JOHN KOELBL saw her in it he did a double take look at her making her uncomfortable.  She was offended by Defendant JOHN KOELBL's conduct.

60.     On November 23, 2015, MS. OSUCHA needed an Officer of the BANK's initials and went into Defendant RICHARD D. KOELBL's office.  When she was standing next to Defendant RICHARD D. KOELBL, he asked her what she was wearing; if it was vanilla. When MS. OSUCHA told him it was her lotion, Defendant RICHARD D. KOELBL told her that he really liked it.  MS. OSUCHA was offended by his conduct.

61.     In late November/early December 2015, MS. OSUCHA met with Colleen Pautler, Assistant Vice President, who advised her that there would be no evaluations of employees until the Spring of 2016, however, raises were being given.  The raise MS.

OSUCHA was given was approximately half of the amount of the raises she had previously received throughout her employment at the BANK.

62.     During her employment, MS. OSUCHA did everything necessary of her under the BANK's harassment policy.  Defendants RICHARD D. KOELBL and JOHN KOELBL hold the two highest level management positions at the BANK, both are on the Board of Directors of the BANK and Defendant RICHARD D. KOELBL is the Chairman of the Board.  MS. OSUCHA was afraid that she would lose her job by complaining because Defendants RICHARD D. KOELBL and JOHN KOELBL are very powerful and control the BANK as well as its Board of Directors.  Other women who have been the victims of sexual discrimination and harassment by RICHARD KOELBL and JOHN KOELBL have also been afraid of losing their jobs if they complained.  In fact, upon information and belief Carolyn Sue Aldinger was terminated from the BANK after she complained of sexual discrimination and refused to permit a sexually hostile work environment to continue.

63.     As a result of the actions of Defendants the BANK, RICHARD D. KOELBL, and JOHN KOELBL, including but not limited to those described above, Defendants have treated MS. OSUCHA adversely because of her sex and in retaliation for her complaints of discrimination, and engaged in knowing, intentional, willful and voluntary course of discriminatory conduct.

64.     As a result of the actions of Defendants the BANK, its agents, servants, and employees, RICHARD D. KOELBL, and JOHN KOELBL, including but not limited to those described above, MS. OSUCHA has been deprived of the terms and benefits of employment.

65.     As a result of the actions of Defendants the BANK, its agents, servants, and employees, RICHARD D. KOELBL, and JOHN KOELBL, including but not limited to those described above, MS. OSUCHA has suffered severe emotional distress, degradation, and humiliation.

66.     As a result of the actions of Defendants the BANK, its agents, servants, and employees, RICHARD D. KOELBL, and JOHN KOELBL, including but not limited to those described above, MS. OSUCHA has suffered lost wages and benefits and a diminution in her ability to earn income in the future.

## CONDITION PRECEDENT TO ACTION

67.     MS. OSUCHA has complied with all the jurisdictional prerequisites to action pursuant to § 706 of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e-5(f) as follows:

a.     In accordance with the time prescribed by § 706(e) of Title VII of the Civil Rights of 1964 and 42 U.S.C. § 2000e-5(e), on or about April 12, 2016, MS. OSUCHA filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC).

b.     On or about the same date, the EEOC caused a copy of said charge to be filed with the New York State Division of Human Rights (DHR).

c.     On or about July 12, 2017, the EEOC issued a Notice of Right to Sue (Issued on Request) indicating that MS. OSUCHA had the right to sue within 90 days of receipt of the notice, more than 180 days had passed since the filing of the charge and the EEOC was terminating its processing of the charge.  A copy of the EEOC Notice of Right to Sue is attached hereto as Exhibit A.

d.　　MS. OSUCHA has filed this action within 90 days of the receipt of the

Notice of Right to Sue from the EEOC.

## AS AND FOR A FIRST CAUSE OF ACTION

68.　　Plaintiff, ASHLEY OSUCHA, repeats and re-alleges each and every allegation

contained in paragraphs "1" through "67" as though fully set forth herein.

69.　　During her time as an employee of Defendant, ALDEN STATE BANK,

Plaintiff, ASHLEY OSUCHA, was subjected to different terms and conditions of employment

than similarly situated male employees.

70.　　Plaintiff, ASHLEY OSUCHA, was subjected to a continuing course of sex

discrimination by Defendants, ALDEN STATE BANK, its agents, servants, and/or employees.

71.　　Plaintiff, ASHLEY OSUCHA, was required to work in a sexually hostile

environment where she had been harassed by her supervisors, other agents, servants, and/or

employees of Defendant, ALDEN STATE BANK, who were aware that Plaintiff, ASHLEY

OSUCHA, was subjected to a hostile work environment; however, Defendant, ALDEN STATE

BANK, refused to investigate, stop, or prevent the discriminatory behavior from continuing.

72.　　The effect of the policies and practices pursued by the Defendant, ALDEN

STATE BANK, as alleged above discriminated against the Plaintiff, ASHLEY OSUCHA, in

ways which deprived her of employment opportunities and otherwise adversely affected her

status as an employee because of sex in violation of 42 U.S.C. § 2000e *et. seq.*

73.　　Defendant, ALDEN STATE BANK, knew or in the exercise of reasonable

diligence should have known of the wrongful and unlawful actions, conduct, and omissions of

its agents, servants, and/or employees and took no remedial action.

74.     As a result of Defendant ALDEN STATE BANK's actions, conduct, and omissions, including but not limited to those described above, Defendant, ALDEN STATE BANK, discriminated against Plaintiff, ASHLEY OSUCHA, with respect to her compensation, terms, conditions, and privileges of employment constituting unlawful sex discrimination in violation of § 703(a) of Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e-2(a), thereby entitling Plaintiff, ASHLEY OSUCHA, to relief under the provisions of § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5.

75.     Defendant, ALDEN STATE BANK's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff, ASHLEY OSUCHA's rights and feelings in violation of § 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

76.     As a result of Defendant, ALDEN STATE BANK's actions, conduct, and omissions, including but not limited to those described above, Plaintiff, ASHLEY OSUCHA, incurred damages including, but not limited to, lost back wages, lost future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment.  Plaintiff, ASHLEY OSUCHA, is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

77.     As a direct and proximate result of Defendant, ALDEN STATE BANK's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff, ASHLEY OSUCHA, has been damaged in the amount of Two Million Dollars.

78.     Pursuant to § 706(k), 42 U.S.C. § 2000 e-5(k) of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff, ASHLEY OSUCHA, is entitled to reasonable costs and attorneys' fees.

79.      Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. §1981a(c), Plaintiff, ASHLEY OSUCHA, demands a jury trial as to all issues so triable.

## AS AND FOR A SECOND CAUSE OF ACTION

80.      Plaintiff, ASHLEY OSUCHA, repeats and re-alleges each and every allegation contained in paragraphs "1" through "67" as though fully set forth herein.

81.      Plaintiff, ASHLEY OSUCHA, invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

82.      Defendant ALDEN STATE BANK, by and through its agents, servants, and/or employees, Defendant RICHARD D. KOELBL and Defendant JOHN KOELBL, and Defendants RICHARD D. KOELBL and JOHN KOELBL, as a result of their substantial ownership interest in the BANK, their power to hire, fire and do more than carry out personnel decisions made by others, and their participation in acts of discrimination and harassment, treated Plaintiff, ASHLEY OSUCHA, adversely because of sex and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et. seq.*

83.      Defendants discriminated against Plaintiff, ASHLEY OSUCHA, with respect to compensation, terms, conditions, and privileges of employment because of sex in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et. seq.*

84.      Defendants wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff, ASHLEY OSUCHA's rights under the Human Rights Law of the State of New York.

85.     As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Plaintiff, ASHLEY OSUCHA, incurred damages, including but not limited lost back wages, lost future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment.

86.     As a result of Defendants wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff, ASHLEY OSUCHA, has been damaged in the amount of Two Million Dollars.

87.     Plaintiff, ASHLEY OSUCHA, demands a jury trial as to all issues so triable.

## AS AND FOR A THIRD CAUSE OF ACTION

88.     Plaintiff, ASHLEY OSUCHA, repeats and re-alleges each and every allegation contained in paragraphs "1" through "67" as though fully set forth herein.

89.     As a result of these offensive acts, including but not limited to those described above, Defendant ALDEN STATE BANK, through its agents, servants, and/or employees, created a sexually hostile working environment in which Plaintiff ASHLEY OSUCHA was intimidated, harassed, and undermined in her attempts to succeed.

90.     Throughout Plaintiff ASHLEY OSUCHA's employment with Defendant ALDEN STATE BANK, Plaintiff ASHLEY OSUCHA, brought the above-described unlawful conduct to the attention of her supervisors.

91.     As a result, Defendant ALDEN STATE BANK, knew or through the exercise of reasonable diligence should have known of the wrongful and unlawful actions, conduct, and omissions of its agents, servants, and/or employees and took no remedial action.

92.     The effects of this hostile working environment were so severe and pervasive that it affected the terms, conditions, and privileges of the Plaintiff, ASHLEY OSUCHA's

employment, constituting unlawful sexual harassment in violation of § 703(a) of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a), thereby entitling Plaintiff, ASHLEY OSUCHA, to relief under the provisions of § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5.

93.     Defendant ALDEN STATE BANK's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff, ASHLEY OSUCHA's rights and feelings in violation of § 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

94.      As a result of Defendant ALDEN STATE BANK's actions, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA, incurred damages, including but not limited to, lost back wages, lost future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment.  Plaintiff, ASHLEY OSUCHA, is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

95.     As a direct and proximate result of the Defendant ALDEN STATE BANK's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA, has been damaged in the amount of Two Million Dollars.

96.      Pursuant to § 706(k), 42 U.S.C. § 2000 e-5(k) of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff ASHLEY OSUCHA is entitled to reasonable costs and attorneys' fees.

97.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. §1981a(c), Plaintiff ASHLEY OSUCHA demands a jury trial as to all issues so triable.

## AS AND FOR A FOURTH CAUSE OF ACTION

98.      Plaintiff ASHLEY OSUCHA repeats and re-alleges each and every allegation contained in paragraphs "1" through "67" as though fully set forth herein.

99.      Plaintiff ASHLEY OSUCHA invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

100.      During the course of Plaintiff ASHLEY OSUCHA's employment, Defendant ALDEN STATE BANK, by and through its agents, servants, and/or employees, Defendant RICHARD D. KOELBL and Defendant JOHN KOELBL, and Defendants RICHARD D. KOELBL and JOHN KOELBL, as a result of their substantial ownership interest in the BANK, their power to hire, fire and do more than carry out personnel decisions made by others, and their participation in acts of discrimination and harassment, subjected Plaintiff ASHLEY OSUCHA to unwelcome comments, insults and other sexually offensive conduct thus creating a hostile work environment and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et. seq.*

101.      Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff ASHLEY OSUCHA's rights under the Human Rights Law of the State of New York.

102.      As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA incurred damages, including but not limited to, lost back wages, lost future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment.

103.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA has been damaged in the amount of Two Million Dollars.

104.    Plaintiff ASHLEY OSUCHA demands a jury trial as to all issues so triable.


## AS AND FOR A FIFTH CAUSE OF ACTION

105.     Plaintiff ASHLEY OSUCHA repeats and re-alleges each and every allegation contained in paragraphs "1" through "67" as though fully set forth herein.

106.    Defendant ALDEN STATE BANK, by and through its agents, servants and/or employees, treated Plaintiff ASHLEY OSUCHA adversely because she complained of and opposed unlawful discriminatory practices on the basis of sex by Defendant ALDEN STATE BANK.

107.    As a result of Defendant ALDEN STATE BANK's actions, conduct, and omissions, including but not limited to those described above, Defendant ALDEN STATE BANK has discriminated against Plaintiff ASHLEY OSUCHA with respect to her compensation, terms, conditions, and privileges of employment and in retaliation for complaining and opposing unlawful discriminatory practices by Defendant ALDEN STATE BANK, in violation of § 707 of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 2000e-(3), thereby entitling Plaintiff ASHLEY OSUCHA to relief under the provisions of § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

108.    Defendant ALDEN STATE BANK's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff

ASHLEY OSUCHA's rights and feelings in violation of § 102(a) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

109.     As a result of Defendant ALDEN STATE BANK's actions, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA incurred damages, including but not limited to, lost back wages, lost future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment.  Plaintiff ASHLEY OSUCHA is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

110.     As a direct and proximate result of Defendant ALDEN STATE BANK's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA has been damaged in the amount of Two Million Dollars.

111.     Pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(k) Plaintiff ASHLEY OSUCHA is entitled to reasonable costs and attorney's fees.

112.     Pursuant to § 102(c) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff ASHLEY OSUCHA demands a jury trial as to all issues so triable.

## AS AND FOR A SIXTH CAUSE OF ACTION

113.     Plaintiff ASHLEY OSUCHA repeats and re-alleges each and every allegation contained in paragraphs "1" through "67" as though fully set forth herein.

114.     Plaintiff ASHLEY OSUCHA invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

115.     During the course of Plaintiff ASHLEY OSUCHA's employment, Defendant ALDEN STATE BANK, its agents, servants, and/or employees, Defendant RICHARD D. KOELBL and Defendant JOHN KOELBL, and Defendants RICHARD D. KOELBL and JOHN

KOELBL, as a result of their substantial ownership interest in the BANK, their power to hire, fire and do more than carry out personnel decisions made by others, and their participation in acts of discrimination, harassment and retaliation, treated Plaintiff adversely in retaliation for her complaints and opposition to unlawful discriminatory conduct and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et. seq.*

116.    Defendants discriminated against Plaintiff ASHLEY OSUCHA with respect to compensation, terms, conditions, and privileges of employment  in retaliation for her complaints and opposition to unlawful discriminatory conduct and in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et. seq.*

117.    Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff ASHLEY OSUCHA's rights under the Human Rights Law of the State of New York.

118.    As a result of Defendants' actions, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA incurred damages, including but not limited to, lost back and future wages and employee benefits, lost employment opportunities, mental anguish, embarrassment, and emotional distress.

119.    As a result of Defendants' wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff ASHLEY OSUCHA has been damaged in the amount of Two Million Dollars.

120.    Plaintiff ASHLEY OSUCHA demands a jury trial as to all issues so triable.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.      On the first cause of action, Plaintiff demands judgment against Defendant ALDEN STATE BANK in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay, front pay, pain, suffering and mental anguish, and punitive damages together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

2.      On the second cause of action, Plaintiff demands judgment against Defendants ALDEN STATE BANK, RICHARD D. KOELBL and JOHN KOELBL in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

3.      On the third cause of action, Plaintiff demands judgment against Defendant ALDEN STATE BANK in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, and punitive damages together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

4.      On the fourth cause of action, Plaintiff demands judgment against Defendants ALDEN STATE BANK, RICHARD D. KOELBL and JOHN KOELBL in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

5.      On the fifth cause of action, Plaintiff demands judgment against Defendant ALDEN STATE BANK in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental

anguish, together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

6.     On the sixth cause of action, Plaintiff demands judgment against Defendants ALDEN STATE BANK, RICHARD D. KOELBL and JOHN KOELBL in the amount of Two Million Dollars as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, together with interest, costs, expenses, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

Dated:        Buffalo, New York
              October 10, 2017


                              s/Josephine A. Greco
                              Josephine A. Greco, Esq., of Counsel
                              Duane D. Schoonmaker
                              GRECO TRAPP, PLLC
                              Attorneys for Plaintiff
                              Office and Post Office Address
                              1700 Rand Building, 14 Lafayette Square
                              Buffalo, New York 14203
                              Telephone Number:  (716) 856-5800
                              E-mail Address:  jgreco@grecolawyers.com