UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASHLEY OSUCHA,

          Plaintiff,

                    **Hon. Hugh B. Scott**

                    17CV1026V

          v.

                    **Order**

ALDEN STATE BANK, et al.,

          Defendants.

Before the Court is plaintiff's motion to compel discovery (Docket No. 29[1]). Responses to this motion were due by July 9, 2019 (Docket No. 30), which defendants duly submitted (Docket No. 34[2]). Reply was due by July 23, 2019 (Docket No. 30), which plaintiff filed (Docket No. 35[3]). This motion was argued on August 29, 2019 (Docket No. 39; see also Docket Nos. 37, 36 (setting adjourned argument date), and the motion was deemed submitted as of August 29, 2019. The Scheduling Order (Docket No. 33) deadlines for discovery and subsequent proceedings was held in abeyance pending resolution of this motion (Docket No. 41).

---

[1]Included with this motion is plaintiff's affidavit, plaintiff's attorney declaration and exhibits (including the discovery demands at issue, defense responses, and exchanged correspondence in good faith attempt to resolve issues short of this motion), and memorandum of law.

[2]In opposition, defendants submitted their attorney's affidavit with exhibits (the materials produced), the affidavit of Bank vice president Hilde Neubauer, and memorandum of law.

[3]Plaintiff submits as her reply her attorney's reply declaration and a memorandum of law.

BACKGROUND

This is a Title VII and New York State Human Rights Law sex discrimination and hostile work place action commenced by plaintiff (a female teller employed by defendant Alden State Bank, the "Bank") against the Bank and two of its then-principal officers, president Richard Koelbl and vice president, chief lending officer John Koelbl (Docket No. 1, Compl.). In her first cause of action, plaintiff alleges that she worked in a sexually hostile work environment created by the Bank, in violation of Title VII, 42 U.S.C. §§ 2000e, et seq., where she has been harassed by her superiors and coworkers (id. ¶¶ 69-78, 71) and that she was subject to different terms and conditions of employment than similarly situated male employees of the Bank (id. ¶ 69). As a result, plaintiff argues that she was discriminated in her compensation, terms, conditions, and privileges of employment (id. ¶ 74). In her second cause of action under New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq., plaintiff also alleges sex discrimination in the terms and conditions of her employment by all defendants (id. ¶¶ 82-86). The third cause of action alleges violation of 42 U.S.C. § 1981a by the Bank in creating a sexually hostile work environment (id. ¶¶ 89-96). Similarly, the fourth cause of action alleges a sexually hostile work environment created by all defendants in violation of New York State Human Rights Law (id. ¶¶ 99-103). The fifth cause of action alleges that plaintiff was treated adversely by the Bank for complaining of and opposing the unlawful discrimination occurring at the Bank, in violation of Title VII (id. ¶¶ 106-11). Finally, the sixth cause of action alleges that all defendants retaliated against plaintiff for complaints against discriminatory conduct, in violation of New York State Human Rights Law (id. ¶¶ 115-19).

Defendants answered on November 17, 2017 (Docket No. 9), asserting among their affirmative defenses the Ellerth/Faragher defense (id. ¶ 44, Tenth Affirmative Defense), see Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); see also Angelone v. Xerox Corp., No. 09CV6019, 2012 WL 537492, at *1 (W.D.N.Y. Feb. 17, 2012) (Siragusa, J.). This case was referred to the undersigned on November 18, 2017 (Docket No. 10). This Court eventually held a Scheduling Conference on February 21, 2018 (Docket No. 20; see also Docket Nos. 11-16, 17-18, 19 (discovery plan from parties)), and issued a Scheduling Order (Docket No. 21). After a few amendments (Docket Nos. 28, 33), discovery was set to conclude on November 27, 2019 (Docket No. 33, Second Am. Scheduling Order). Consideration of this motion led to holding in abeyance subsequent deadlines (Docket No. 41; see also Docket No. 40, plaintiff's motion for expedited hearing).

*Plaintiff's Motion to Compel (Docket No. 29)*

Plaintiff moves to compel production of documents and answers to her Interrogatories (Docket No. 29). The document request (Docket No. 29, Pl. Atty. Decl. Ex. A) totals 89 distinct requests, while the Interrogatories (id., Ex. B) consists of 12 major interrogatories with 96 total subparts. Interrogatory Number 4 poses 12 subpart questions to a list of 29 Bank officials and employees (or totaling 348 questions in that Interrogatory). The total number of Interrogatories and subparts here is 432. In general, plaintiff seeks extensive personnel records from the Bank as well as documents from the investigation of plaintiff's claims conducted prior to her suit, conducted by Hodgson Russ, the law firm retained by the Bank.

Defendants served their responses and Answers to Interrogatories (id., Exs. C, D), raising various objections and presenting caveats as to the completeness of the production (id.). They

argue that they produced 3,681 pages of "responsive material" addressing plaintiff's document demands (Docket No. 34, Defs. Atty. Aff. ¶ 3, Exs.). Defendants in response to this motion also served 1,290 additional pages of discovery (Docket No. 34, Defs. Memo. at 5).

In her motion to compel, plaintiff argues that the objections were baseless, often boilerplate, and without stating whether materials were being withheld pursuant to the stated objection (Docket No. 29, Pl. Memo. at 3-4).

## DISCUSSION

I. Applicable Standard

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

    A. Proportionality and Scope of Discovery, Rule 26(b)

Rule 26(b) was amended in 2015 to relocate proportionality and place it prominently with relevance as defining the scope of discovery, see Black v. Buffalo Meat Serv., Inc., No. 15CV49, 2016 WL 4365506, at *6 (W.D.N.Y. Aug. 16, 2016) (Scott, Mag. J.). "Relevance under

Rule 26(b)(1) is now tempered by proportionality; particular items may be relevant but discovery to obtain them may not be proportionate to that case," id. "Proportionality focuses on the marginal utility of the discovery sought," Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088, 2016 U.S. Dist. LEXIS 18460, at *43 (S.D.N.Y. Feb. 16, 2016) (Pitman, Mag. J.) (rejecting self-represented plaintiff's requests for over 1,000 items); Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 322-23 (S.D.N.Y. 2003). As amended and as noted by one commentator, "the universe of discoverable information is smaller than before," Kenneth Berman, Reinventing Discovery under the New Federal Rules, 42 Litigation 1, 5 (Spr. 2016). Relevance has two aspects, the categories of materials sought and the identities of the coworkers whose records the employment discrimination plaintiff seeks produced, Banks v. General Motors, LLC, No. 14CV970, 2017 WL 3172552, at *5 (W.D.N.Y. July 26, 2017) (Scott, Mag. J.).

      Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective Order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not allowing a proposed disclosure or discovery device or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

      Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

5

B.     Interrogatories, Rule 33

Rule 33 provides that, unless stipulated or as ordered, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)," Fed. R. Civ. P. 33(a)(1), regarding the scope and limitations on discovery, id., R. 33(a)(2). Whether a subpart asks a distinct question from a primary Interrogatory "is a decision for the court to make based on the facts and circumstances before it, and the equities involved in the case," Claudia Wilkin & Robert M. Bloom, 7 Moore's Federal Practice—Civil § 33.30[2] (2013). While a party cannot evade the 25-Interrogatory limit by joining subparts seeking distinct information, "queries about communication that ask for the facts of its transmission, i.e., time, place, persons present, and contents, can be asked separately but count as a single Interrogatory," Black, supra, 2016 WL 4363506, at *6 (citing in turn Fed. R. Civ. P. 33 advisory committee note, 1993 amendment; Pouncil v. Branch Law Firm, 277 F.R.D. 642, 646 (D. Kan. 2011) (applying "common theme" method in determining whether subparts pose distinct questions)). Subparts are counted as distinct questions "'if they are not logically or factually subsumed within and necessarily related to the primary question,'" Black, supra, 2016 WL 4363506, at *7 (quoting, with citations omitted, Krawczyk v. City of Dallas, No. 3:03-CV-0584-D, 2004 U.S. Dist. LEXIS 30011, at *7 (N.D. Tex. Feb. 27, 2004) (Ramirez, Mag. J.)). One test is "if the first question can be answered fully and completely without answering the second question is totally independent of the first and not 'factually subsumed within and necessarily related to the primary question,'" Krawczyk, supra, 2004 U.S. Dist. LEXIS 30011, at *7 (quoting Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684, 686 (D. Nev. 1997)); Black, supra, 2016

6

WL 4363506, at *7. Commentators have found the better view of subparts is that they are not distinct "if they are logically and necessarily related to the primary question," 7 Moore's Federal Practice—Civil, supra, § 33.30[2].

Each Interrogatory "must, to the extent not objected to, be answered separately and fully in writing under oath," Fed. R. Civ. P. 33(b)(3), with grounds for any objection stated with specificity and any ground not stated deemed waived unless this Court, for good cause, excuses the failure to raise, id., R. 33(b)(4). The party asked to respond to Interrogatories need not answer more than 25 posed and can choose merely to answer the first 25 (including distinct subparts that would total 25), Nowlin v. Lusk, No. 11CV712, 2014 WL 298155, at *6 (W.D.N.Y. Jan. 28, 2014) (Scott, Mag. J.); see 7 Moore's Federal Practice—Civil § 33.30, supra, at [1] & nn.5, 6.1 (citing cases and noting better practice for party to answer first 25 Interrogatories and object to answering the rest). By Order, this Court may alter the number of Interrogatories, Fed. R. Civ. P. 26(a)(2); see also Fed. R. Civ. P. 33(a)(1).

C.     Document Production, Rule 34

Document production must be within the scope of Rule 26(b), Fed. R. Civ. P. 34(a). Unlike Interrogatories (cf. Fed. R. Civ. P. 33(a)(1)), the Federal Rules of Civil Procedure does not have a numerical limit for document demands, 7 Moore's Federal Practice—Civil, supra, § 34.02[3]; see also Smalls v. Bright, No. 09CV6545, 2011 U.S. Dist. LEXIS 129669, at *3 n.1 (W.D.N.Y. Nov. 9, 2011) (Payson, Mag. J.) (noting the Western District of New York Local Civil Rule once having a document request limit).

II.       Good Faith Attempt to Resolve

First, defendants argue that plaintiff failed to confer with them in good faith to resolve these discovery matters prior to motion practice (Docket No. 34, Defs. Memo. at 4-8). Plaintiff replies that she engaged in good faith efforts to meet and confer (Docket No. 35, Pl. Atty. Reply Decl. ¶¶ 4, 7-8, 10-11, 14) to no avail, arguing that efforts to meet and confer here would be futile (id. ¶ 16). This Court finds that plaintiff **has engaged in good faith efforts** to resolve her discovery disputes with defendants prior to file this motion. Next, is the merits of plaintiff's motion to compel.

III.      Plaintiff's Discovery Demands

      A.       Proportionality

Plaintiff asks for a great deal, essentially the personnel records of employees and officials of the Bank and the internal investigation of plaintiff's complaints conducted by attorneys at Hodgson Russ. To date, defendants have produced a total of 4,971 pages and plaintiff finds that this production is incomplete.

One element of discovery both sides have not discussed for either plaintiff's Interrogatories or document requests is the renewed emphasis on the proportionality of the discovery demands, see generally Adv. Comm. Notes, 2015 amend. to Fed. R. Civ. P. 26; Black, supra, 2016 WL 4363506, at *5-6. In Black, this Court looked at the requests sought there and compared them with the employment discrimination claims raised and concluded that the requests were disproportionate to the claims at issue under Rule 26(b)(1)'s proportionality, Black, supra, 2016 WL 4363506, at *6.

8

The United States District Court for the Northern District of New York stated in <u>Palmer v. New York State Office of Court Administration</u>, No. 5:00-CV-0110 (FJS/GAL), 2009 WL 1118271, at *1 & n.1 (N.D.N.Y. Apr. 27, 2009):

> "Employment discrimination plaintiffs often seek personnel records of employees not directly involved in the suit in order to develop information needed to make a comparison between the employment situations of those employees and those of the plaintiff. However, the required production during pretrial discovery of personnel records of non-party employees—which records invariably contain sensitive medical, financial and other information of a highly personal nature—is not generally favored,"

<u>id.</u> (citations omitted); <u>Banks</u>, <u>supra</u>, 2017 WL 3172552, at *5.

As in <u>Black</u>, looking at the requests in this single plaintiff's sexual harassment and hostile work environment action and compare them with the alleged monetary value of the case, the importance of the discovery in resolving the case, these requests are **disproportionate to the case**.

As for monetary value of this case, plaintiff demands $2,000,000 in compensatory and punitive damages for her six causes of action (Docket No. 1, Compl. at pages 26-27). As for relative accessibility of relevant information, defendants (particularly the Bank) have access to the materials sought but the record has not established the relative resources of each side, although this is an action by an employee of a bank suing her employer and two of its officers. Much of the documents seek information about coworkers whether they were similarly situated to plaintiff or faced instances of harassment. This informs plaintiff's hostile work environment claims. Although the Complaint alleges harassment against other female employees, they are not parties in this action and the allegations are made only to show a pattern by defendants in either harassing these employees or tolerating that harassment, creating the hostile work environment.

While Judge Elfvin, in <u>Gorzynski v. JetBlue Airways Corp.</u>, 03CV774, 2005 WL 8156622, at *5 (W.D.N.Y. Aug. 4, 2005) (Elfvin, J.) (Docket No. 35, Pl. Reply Memo. at 8-9), stated that this Court need not decide which employees were similarly situated to the plaintiff at the discovery phase because relevant employees' personnel files were necessary for development of the case, that motion was decided before the renewed emphasis on the proportionality in the amended Rule 26(b) of the means sought to obtain that information.

The court in <u>Palmer</u> held that obtaining personnel records from non-party coworkers is not generally favored, 2009 WL 1118271, at *1 n.1, despite the relevance of such material to a plaintiff's claim. This material may be relevant to show a "general pattern of discrimination by an employer" in an individual disparate treatment case, <u>Flanagan v. Travelers Ins. Co.</u>, 111 F.R.D. 42, 48 (W.D.N.Y. Jun. 25, 1986) (Larimer, Mag.) (<u>see</u> Docket No. 29, Pl. Memo. at 4, 11). Although this information about these Bank employees may be relevant at a discovery stage (to identify who is similar to plaintiff), the effort to obtain that information may be disproportionate to its necessity. Plaintiff does not allege claims of other affected coworkers or allege a class action. What is proportional, however, is materials relating directly to plaintiff's claims.

The Complaint also alleges specific instances of harassment against three coworkers (Docket No. 1, Compl. ¶¶ 32, 34, 46, 52, 55-56) and plaintiff sought the personnel records for these three employees (<u>see</u> Docket No. 29, Pl. Memo. at 8); it is **proportional to produce these records**, especially since the fifth and sixth causes of action allege retaliation against plaintiff for opposing unlawful discrimination. Plaintiff, however, seeks personnel records from other coworkers or supervisors, on the claim that the suffered sexual harassment, discrimination, or

10

hostile work environment, or were harassers themselves (id.). Seeking these personnel records, however, is **disproportional** to the issues in this case. As was found in Toscasio v. New Canaan Board of Education, No. 3:15CV53(AWT), 2016 U.S. Dist. LEXIS 8103, at *27-28 (D. Conn. Jan. 25, 2016) (Merriam, Mag. J.), in rejecting similar document request in an employment discrimination action, the documents sought here "appear to be of minimal importance in resolving the issues in this case."

Defendants have produced materials on plaintiff, defendants, and some noted employees. Generally, **this is sufficient**, save production of personnel files for the three other coworkers alleged in the Complaint to have been harassed of which plaintiff became aware (Jamie Hey, Kaitlyn Chadbourne, and Julie Osucha) (Docket No. 1, Compl. ¶¶ 32, 34, 46, 52, 55, 56). The key omission, however, defendant Bank's internal investigation of plaintiff's contentions by defendant's firm, Hodgson, Russ, as discussed below.

B.  Interrogatories

Plaintiff posed 12 major interrogatories with 96 subparts, with some asking information about 29 Bank employees and officials, for a total of 432 questions (Docket No. 29, Pl. Atty. Decl. Ex. B). The issue here is how many of the subparts defendants claim are distinct Interrogatories that would reach and exceed the 25-Interrogatory ceiling, see Black, supra, 2016 WL 4363506, at *3.

Some of the Interrogatories ask for documents sought in the document requests (see Docket No. 29, Pl. Atty. Decl. Exs. B (Interrogatories, Interrogatories No. 8), A (document requests). "Interrogatories may not be used to bypass the document production procedure of Rule 34," Black, supra, 2016 WL 4363506, at *7, citing 8A Federal Practice and Procedure

11

§ 2163, at 221. Thus, plaintiff has the choice of adhering to Interrogatory Number 8 (with documents supporting the answer) or the relevant document request Number 9, but not both.

Parsing each Interrogatory, Interrogatory Number 1 seeks information about plaintiff's employment with defendant Bank. The subparts are logically related to each other; hence these subparts **constitute one question**. Similarly, Interrogatory Number 2 poses subparts describing plaintiff's supervisors (title, gender, dates supervised plaintiff) and also **constitute a single question**. While this Interrogatory seeks information for potentially a number of supervisory employees and officers, it still is a single Interrogatory. Interrogatory Number 3 ask about defendant's discrimination complaints, with subparts as to the details of each complaint. Like asking about the facts of a conversation, these subparts are **a single question**. Again, as with plaintiff's supervisors, the number of discrimination complaints may be numerous, but the questions here remain a single Interrogatory. As for Interrogatory Number 4, plaintiff asks twelve facts about employees and officials identified in the document request Number 1. Given the proportionality ruling made in this Order, defendants need not respond to all the employees plaintiff sought documents for in that document request and thus need not answer the Interrogatory as to those employees and officials not produced. As for the officials and employees defendant does produce documents for, the 12 subparts ask distinct categories of questions; first are the identifying information (date of birth, gender, date hired, position held, that person's supervisor), next are descriptions of that employee's employment and disciplinary history and whether they sought and obtained promotions, and finally the last subpart asks for compensation and benefits received by that employee or officer. Although related to the

identified employee or officer, plaintiff posed **three different questions**. Interrogatory Number 5 poses a single question, as do Numbers 9, 10, 11, and 12.

Interrogatory Number 6 asks about plaintiff's pay raise decisions, with subparts identifying those involved in the process, documents created or used to make those decisions, and the date decisions were made. These subparts are related to the overall question of how did plaintiff gain pay raises; thus, they **constitute a single Interrogatory**. Interrogatory Number 7 asks for directory information for witnesses, with subparts identifying the classes of witnesses plaintiff wants identified. Initial disclosure under Rule 26(a)(1)(A)(i) has the parties submit the addresses and telephone number of those "likely to have discoverable information" (see also Docket No. 29, Pl. Atty. Decl. Ex. B, Interrogatory 7d.). Without the specification, defendants should have produced the directory information for the witnesses sought in this Interrogatory. This constitutes **a single question** even though plaintiff seeks distinct subgroups of witnesses. Interrogatory Number 8 was addressed above, since it repeats the request for defendants' employment policies that were sought in document Request Number 9. This Interrogatory **will not be counted in the 25-Interrogatory limit since plaintiff can obtain this information in a pending document request**.

As considered above, the numerous subparts in plaintiff's Interrogatories are in fact **13 distinct Interrogatories**, well below the 25-Interrogatory limit of Rule 33. As so considered, plaintiff's motion (Docket No. 29) to compel their answer against the challenge of exceeding the limit is **granted** and defense objection on that ground is **denied**. These Interrogatories, however, are governed by the overall scope of discovery Rule 26(b)(1) proportionality standard, as discussed above.

C. Document Demands

Taking each demand in order, the first demand seeks personnel files from 29 employees (Docket No. 29, Ex. A). Defendants responded with personnel files from 6 employees, including plaintiff, the individual defendants (id., Ex. C). Applying proportionality and relevant limits to production, plaintiff's requests **are not proportional to the claims involved**.

Plaintiff is correct, defendants, particularly the Bank as the client and entity that retained Hodgson Russ, have control over Hodgson's investigation files. Those files **are to be produced**. The Bank may not have the documents in their files, but its attorney, Hodgson, does, see Gruss v. Zwirn, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (Docket No. 29, Pl. Memo. at 5). Hodgson, however, may invoke attorney work product or attorney-client privilege, but the latter essentially will be waived because the client (the Bank) is requesting these documents to defend this action, Angelone, supra, 2012 WL 537492, at *3-4 (Docket No. 29, Pl. Memo. at 5). By defendants asserting the Ellerth/Faragher defense, this Court has to determine whether defendants exercised reasonable care to prevent and correct any discriminatory or sexually harassing behavior and to do so the employer Bank "waives any work product protection or attorney-client privilege with respect to investigations of employee's claims," id. at *3. This limited waiver of these privileges in asserting the Ellerth/Faragher defense, see id. at *4, is to avoid these privileges being used both as a sword and shield, id.

Defendant Bank here has been advised that Hodgson Russ did not have documentation of its investigation (Docket No. 34, Defs. Atty. Aff. ¶ 29; id., Defs. Memo. at 11), later Hodgson Russ found some documents but defendants withheld them due to privilege and listed them in a privilege log (Docket No. 34, Defs. Atty. Aff. ¶¶ 33-35, Ex. D; id., Defs. Memo. at 11-12).

14

Plaintiff should not have to resort to third party subpoena upon Hodgson Russ to obtain those client reports.

Defendants claim they produced everything they have on allegations of discrimination, hostile work environment, harassment, and policies and training as attested to by Bank vice president Hilde Neubauer (Docket No. 34, Defs. Memo. at 15-17; id., Defs. Atty. Aff. Ex. D), save what was claimed to be deemed to be privileged. This Court **accepts this representation, save the Hodgson Russ materials**; defendants still are to **produce the Hodgson Russ investigation materials**. Defendants are advised that no "additional" or "new" materials are found that were not produced they run the risk of preclusion or other sanction for not turning them over earlier.

Defendants also shall **identify documents produced pursuant to their Rule 26(a) initial disclosure** (see Docket No. 29, Pl. Atty. Decl. Ex. A, Request No. 2) among the thousands of pages produced. This identification allows the parties to find gaps in the production and use discovery for follow up. A chart identifying by Bates numbering and reference to Rule 26(a) initial disclosure categorize how particular production responded to the initial disclosure requirement.

Defendants also should provide a privilege log, identifying responsive documents and stating the basis for precluding their discovery, in addition to whatever log was provided for the Hodgson Russ materials.

D. Summary

As a result, plaintiff's motion (Docket No. 29) to compel is **granted in part, denied in part**. The amendment to the Scheduling Order stated below should give the parties ample time to complete discovery.

V. Amended Scheduling Order

With the resolution of the motion to compel, the discovery and other deadlines need to be reset (cf. Docket No. 41). Thus:

**THIRD AMENDED SCHEDULING ORDER**

- Discovery concludes by **March 30, 2020**, or **more than 90 days from entry of this Order**;

- Motions due by **June 30, 2020**, or 90 more days from the discovery deadline;

- Mediation also to end by **June 30, 2020**.

If no dispositive motions are filed, the parties will contact the Chambers of Judge Vilardo within 10 days of the motions deadline to seek a pretrial conference to set the trial date.

No further extensions of these dates will be granted except upon written application filed prior to the deadline sought to be extended, showing good cause for the extension.

CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 29) to compel is **granted in part, denied in part**.

The Second Amended Scheduling Order (Docket No. 33) is amended as stated above.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
December 12, 2019