# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASHLEY OSUCHA,

                            Plaintiff,

-vs-

ALDEN STATE BANK,
RICHARD D. KOELBL and
JOHN KOELBL,

                           Defendants.

**SECOND AMENDMENT TO
DEFENDANTS' RESPONSES
TO PLAINTIFF'S FIRST
REQUEST FOR PRODUCTION
OF DOCUMENTS**

Civ. No. 1:17-cv-01026-LIV-HBS

---

The Defendants, pursuant to Federal Rule of Civil Procedure 34(b), for their Responses to Plaintiff's First Request for Production of Documents, state as follows:

## PRELIMINARY STATEMENT

It should be noted that the defendants have not fully completed investigation of the facts relating to the case, have not fully completed discovery, in this action, and have not completed preparation for trial. All of the answers and disclosures contained herein are based only upon such information and documents which are presently available to and specifically known to the Defendants and disclose only those contentions which presently occur to the Defendants. It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions herein set forth. The following discovery responses are given without prejudice to Defendants' right to produce evidence of any subsequently discovered fact or facts which the Defendants may later develop.

25077750.v1

The answers contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of the Defendants in relation to further discovery, research or analysis.

These responses are made solely for the purpose of this action. Each answer is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and any and all other objections and grounds which would require the exclusion of any statement herein if the request were asked of, or any statements contained herein were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that the Defendants have answered any request should not be taken as an admission that the Defendants accept or admit the existence of any facts set forth or assumed by such request or that such response constitutes admissible evidence. The fact that Defendants have answered part or all of any request is not intended and shall not be construed to be a waiver by the Defendants of all or any part of any objection to any request made by the Defendants.

The Defendants will, during the course of this litigation, pursue extensive formal discovery, as well as extensive investigation and informal discovery on their own. Therefore, without suggesting or implying any interest to respond less than fully to the requests propounded, the Defendants must point out that their answers are of necessity of a somewhat preliminary nature and that the full factual basis concerning this matter is yet to be developed with complete precision. The following responses to production are based upon information presently available to the Defendants and are made without prejudice to the Defendants' right to utilize subsequently discovered facts.

Each and every date stated in response to any request is hereby represented as being approximate, not precise.

Each and every statement of fact stated in response to any request is hereby represented as being true and correct, to the best of the Defendants' present knowledge and recollection.

Whenever in any of the following responses reference is made to a prior response by way of the statement, "See response to request number (blank)," said prior response is intended to be, and for all purposes shall be deemed and construed to be, incorporated into the response in which such statement appears, as if fully set for the therein at length.

To the extent that the request purports to require disclosure of confidential attorney-client communications and/or privilege work product, the Defendants object. No waiver of said privileged is intended or should be implied from any of the responses to the requests.

The preliminary statement is incorporated into each of the responses set forth below.

## **GENERAL OBJECTIONS**

The Defendants hereby expressly reserve their right to object to the introduction into evidence, at trial or in any other proceeding, of any information or documents contained in or referred to in the following discovery responses on any ground, including, without limitation, relevance and materiality.

The Defendants' responses to these demands are limited to information and documents not protected from disclosure pursuant to the attorney work product doctrine, the attorney-client privilege, or any other privilege or immunity, and insofar as any request calls for the disclosure of any such information or documents, the Defendants object to the demands on each such ground. The Defendants further objects to these demands to the extent that they call for the disclosure of materials prepared in anticipation of litigation.

The Defendants' responses are also limited to information and documents which are relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

The Defendants further object to these demands to the extent that the individual requests are vague, ambiguous, overbroad, are not limited in time or scope, and contain terms that are not defined with reasonable particularity. The Defendants' responses to these demands are based on its best understanding of the meanings of the request and are not to be construed as an admission of, or agreement with, any of the matters contained in the demands, except where expressly otherwise stated.

The Defendants' responses to these demands are based upon information and documents presently in their possession and specifically known to it at this time. The Defendants have not completed investigation and discovery in this action, or its preparation for trial. Although a diligent search has been conducted to locate information responsive to these demands, it is anticipated that further investigation, discovery, research and preparation may disclose further information, documents, and contentions pertaining to the subject matter of this action, and lend new meaning to information and documents already known to the Defendants. These responses are therefore without prejudice to the Defendants' right to rely upon any information, documents, or contentions at trial or in any other proceeding. The Defendants hereby expressly reserve the right to alter or amend these responses to reflect any such information, documents, or contentions, although they undertake no obligation to do so.

The Defendants further object to these demands to the extent that the individual requests seek information or documents which contain trade secrets and/or other proprietary, confidential

research, development and commercial information of the Defendants.   Production of such documents must be subject to a Protective Order.

The Defendants further object to these demands to the extent that the individual request seeks information or documents regarding complaints or claims involving allegations of a nature different than those involved in this action, on the grounds that such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   The Defendants' responses will be limited accordingly.

The Defendants further object to these demands to the extent that the individual request seeks information or documents subsequent to the date of the alleged occurrence on the grounds that such information and documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The Defendants' responses will be limited accordingly.

These requests make no attempt to specifically describe each individual item or reasonably particularizing each category of item.  Plaintiff has not established in discovery that the requested items exist or are in the possession and control of the Defendants.

These requests constitute undue burden, activity, expense and annoyance constituting harassment and oppression as to writing, subject matter and time.  There are inadequate and confusing definitions and directions.

These requests are not calculated to lead to the discovery of admissible evidence.  The burden, expense and intrusiveness of this request, and the business privacy interests of the Defendants, outweigh the likelihood that the information sought will lead to admissible evidence.

Subject to the foregoing objections and conditions, which are incorporated into each of the following responses by this reference, the Defendants specifically respond upon information and belief to these demands as follows:

## RESPONSES TO FIRST REQUEST FOR PRODUCTION

1.    The personnel file and/or any personnel document, in whatever form(s) ever maintained, including but not limited to office and personnel files, supervisory files, training files, performance files, Human Resources files, and/or any separate file materials and/or computer tape and/or computer-stored personnel record maintained regarding any of the following individuals, including but not limited to job applications, acknowledgment of employee handbooks, acknowledgment of policies and procedures, performance evaluations, performance notations, performance improvement plans, pay records, wage and salary history sheets, salary change forms, payroll change information, W-2 Statements, Form 1099s, employee yearly calendars, discipline records, work histories, training and experience records, resumes/CVs, continuing education records, transfer, promotion, and/or demotion records, and review materials:

a.    Ashley Osucha;

b.    Richard Koelbl;

c.    John Koelbl;

d.    Steven Woodard;

e.    Hilde Neubauer;

f.    Carolyn Sue Aldinger;

g.    Colleen Pautler;

h.    Tracy McMaster;

i.    Robin Maier;

j.    Patricia Aldridge;

k.    Sylvia Sweet;

l.    Jamie Hey;

m.    Kaitlyn Chadbourne;

n.   Julie Osucha;

o.   Megan Bippert;

p.   Dawn Schimweg;

q.   Teresa Miranda;

r.   Heather Zuppelli;

s.   Emily Koelbl;

t.   Robert Engelhart;

u.   Christopher Gust;

v.   Jesse Jerge;

w.   Shawn Gillen;

x.   Nicole Aldinger;

y.   Noel Smithers;

z.   Danielle Wagner;

aa.   Katherine Koelbl;

bb.   Diane Setlock; and

cc.   Laurie Bradley.

**AMENDED RESPONSE:** The defendants object to this demand on the grounds that it is excessively broad, overreaching and exerts an undue burden, activity, expense and annoyance to produce documents that are not relevant to the facts and circumstances of this action, and seeks material not calculated to lead to the disclosure of admissible evidence. Notwithstanding the foregoing, the following personnel files are attached as Exhibits "A" through "F":

**Exhibit A: Steven Woodard (Bates Stamped O000001-O000112)**

**Exhibit B: John Koelbl  (Bates Stamped O000113-O000250)**

**Exhibit C: Hilde Neubauer  (Bates Stamped O000251-O000335)**

**Exhibit D:  Carolyn Sue Aldinger   (Bates Stamped  O000336-O000632)**

**Exhibit E:  Ashley Osucha (Bates Stamped O000633-O000822)**

**Exhibit F:  Richard Koelbl (Bates Stamped O000823-O000954)**

*In further response and pursuant to Hon. Hugh B. Scott's Order filed 12/12/19, the following additional personnel files are hereby disclosed:*

**Personnel file of Jamie Hey  (Bates Stamped O003692- O003982)**
**Personnel file of Kaitlyn Chadbourne (Bates Stamped  O003983-O004120)**
**Personnel file of Jamie Hey (Bates Stamped O004121-O004333)**

2.      Any and all documents referred to, listed, or intended to be encompassed within the

classifications of documents set forth in Defendant's Rule 26 Initial Disclosures.

**AMENDED RESPONSE:**

**Osucha Position Statement – the Position Statement submitted to the EEOC consist of the following:**

**Position Statement Argument– Bates Stamped O001722-O001728**
**Exhibit A - Employee Handbook – Bates Stamped O001729-O001794**
**Exhibit B - Affirmative Action Plan – Bates Stamped O001795-O001866**
**Exhibit C - Disciplinary Procedure Policy – Bates Stamped O001867-O001870**

**Aldinger Position Statement Exhibits– The Position Statement exhibits previously produced consist of the following:**

**Exhibit A – Number of Employees – Bates Stamped O001871-O001872**
**Exhibit B – Organizational Chart -  Bates Stamped O001873-O001874**
**Exhibit C – Employee Handbook - Bates Stamped O001875-O001940**
**Exhibit D – Affirmative Action Plan - Bates Stamped O001941-O002012**
**Exhibit E – Management Trainee Program - Bates Stamped O002013-O002017**
**Exhibit F – Termination Policy and Procedure - Bates Stamped O002018-O002028**
**Exhibit G – Bank's Disciplinary Policy - Bates Stamped O002029-O002032**
**Exhibit H – Personnel file of Carolyn Sue Aldinger - Bates Stamped O002033-O002054**
**Exhibit I -  Compensation analysis results - Bates Stamped O002055-O002059**
**Exhibit J – November 3 performance notation - Bates Stamped O002060-O002062**
**Exhibit K – 1/10/15 Correspondence response to Complaint - Bates Stamped O002063-O002064**

**Exhibit L – Internal Discrimination Complaint report - Bates Stamped O002065-O002087**

**Exhibit M – Memo re 8/3/125 f/u letter - Bates Stamped O002088-O002091**

**Exhibit N -  Email exchange regarding complaints of being ignored - Bates Stamped O002092-O002095**

**Exhibit O – Bank compensation survey - Bates Stamped O002096-O002107**

3.      Any and all documents pertaining to any meetings, discussions, encounters, and/or conversations that the Defendants, their agents, servants, and/or employees had with respect to Plaintiff, Plaintiff's employment, Plaintiff's complaints of discrimination, hostile work environment, and/or retaliation, including but not limited to correspondence, memoranda, notes, complaints, letters, statements, meeting minutes, interview notes, investigation notes, investigation interview notes, statements of witnesses, findings, determinations, and/or and disciplinary letters.

**RESPONSE:   The defendants object to this demand on the grounds that it is overreaching, unduly burdensome and unlimited in time and scope.  Without waiving said objections, any documentation that may exit would be contained in the personnel files and/or emails (Exhibit G) submitted herewith:**

| | | |
|---|---|---|
| **Exh. G email folder 1** | **Bates Stamped** | **O000955-O001114** |
| **Exh. G email folder 2** | **Bates Stamped** | **O001115-O001230** |
| **Exh. G email folder 3** | **Bates Stamped** | **O001231-O001323** |
| **Exh. G email folder 4** | **Bates Stamped** | **O001324-O001482** |
| **Exh. G email folder 5** | **Bates Stamped** | **O001483-O001487** |

**In addition, attached as Exhibit Q (Bates Stamped O002389-O002391) are notes made as a result of two meetings that occurred at Alden State Bank on August 19, 2015.  The first two page report are notes prepared by Hilde Neubauer involving a meeting with Ms. Neubauer, Carolyn Sue Aldinger and Plaintiff.  The second one page report are notes prepared by Ms. Neubauer involving a meeting with Ms. Neubauer, Carolyn Sue Aldinger and Kaitlyn Chadbourne.**

**AMENDED RESPONSE:  See documents provided by Hodgson Russ involving the investigation of the complaints made by plaintiff (O003682-O003691)**

4.      All documents in Defendants' possession or control relating to any employee's claims of discrimination, hostile work environment, and/or retaliation for the period of January 1, 1974 to the conclusion of this action, including but not limited to complaints, letters, statements, correspondence, memoranda, notes, meeting minutes, interview notes, investigation notes, investigation interview notes, statements of witnesses, findings, determinations, and/or and disciplinary letters.

**RESPONSE:    The defendants object to this demand on the grounds that it is overreaching, unduly burdensome, unlimited in time and scope and potentially seeks confidential information pertaining to individuals who are not parties to this action. Notwithstanding the foregoing, any such documentation that may exist may be in emails contained in five (5) folders that are produced as Exhibit G (see above) as well as the position statements (Exhibit J – Bates Stamped O001722-O001870 and  Exhibit K – Bates Stamped O001871-O002107 and O002108-O002118).  In addition, see Exhibit Q (Bates Stamped O002389-O002391).**

**AMENDED RESPONSE:  In addition to the above, the summary of a conversation that occurred with Kaitlyn Chadbourne on August 19, 2015 (Bates Stamped O002392) and the summary of a conversation that occurred with Ashley Osucha (Bates Stamped O002393-O002394) have been produced.**

**See also Hodgson Russ file on Osucha (O003682-O003691)  and Aldinger (O004334-O004650)**

5.      All documents in Defendants' possession or control relating to Defendants' policy, procedure, and/or practice with respect to which ALDEN STATE BANK officers, directors, and/or employees are authorized to receive complaints of discrimination, hostile work environment, and/or retaliation, including but not limited to any communications made by Defendants to Plaintiff concerning to whom Plaintiff was to bring her complaints of discrimination, hostile work environment and/or retaliation.

**RESPONSE:   The policies and procedures of the defendant, ALDEN STATE BANK are set forth in the Employee Handbook, a copy of which is produced as Exhibit H (Bates Stamped O001488-O001552) herein.**

**AMENDED RESPONSE:  In addition to above, see number 9 below.**

6.      All documents, tape recordings, videotape recordings, memorializing in any way recording or reflecting any words, actions, depictions, statements, declarations, conversations or other communications by Plaintiff or any employee, agent, servant, or assignee of Defendants regarding Plaintiff, Plaintiff's employment relationship with Defendants, and/or Plaintiff's claims of discrimination, harassment, and/or retaliation, including, but not limited to, copies of all statements, including oral, stenographic, electronically recorded or written, signed or unsigned.

**RESPONSE:   There are no tape recordings or video materials responsive to this demand in the defendants' possession. Documents relating to Plaintiff's employment relationship with the defendants, and Plaintiff's claims of discrimination, harassment and/or retaliation are included in the defendants' position statement to the E.E.O.C. (Exhibit J – Bates Stamped O001722-O001870).  See also Exhibit Q (Bates Stamped O002389-O002391).**

**AMENDED RESPONSE:  In addition to the above, see number 4 above.**

7.      Any writing constituting any finding, administrative, and/or judicial finding or decision, including, without intending to limit, any finding of probable cause or reasonable cause to believe that Defendants discriminated, harassed, and/or retaliated against any employee on any basis including but not limited to sex, race, and/or age for the period from January 1, 1995 to the conclusion of this action.

**RESPONSE:   The defendants object to this demand on the grounds that it is overreaching, unduly burdensome and unlimited in time and scope.  Further, the defendants are not in possession of any administrative or judicial finding or decision.**

8.      Documents from any and all employee exit interviews or final meetings for any employee of Defendant for the period of January 1, 1995 to the conclusion of this action.

**RESPONSE:   The defendants object to this demand on the grounds that it is overbroad, burdensome and irrelevant to the facts and circumstances of this action.**

9.     All manuals, handbooks, policies, procedures, notebooks, notices, directives, communications to employees, and communications to and from the Board of Directors including but not limited to the Alden State Bank Branch Policy and Procedure Manual and all supervisors' manuals, notebooks, and/or other written materials referring or relating to Defendant' policies, procedures and/or programs, pertaining to:

|     |     |
| --- | --- |
| a. | Hiring; |
| b. | Job descriptions; |
| c. | Job qualifications; |
| d. | Job assignment; |
| e. | Full-time employment; |
| f. | Assignment of work to full-time employees; |
| g. | Appraisal, including but not limited to conducting real estate appraisals for Defendant's mortgage customers; |
| h. | Training programs or skill acquisition opportunities; |
| i. | Seniority; |
| j. | Supervision; |
| k. | Ethics; |
| l. | Business Conduct; |
| m. | Conduct; |
| n. | Employee relationships; |
| o. | Fraternization/anti-fraternization; |
| p. | Dress Code, including the Saturday dress code for the Lancaster Branch; |

q.    Lending, including but not limited to selection of employees able to approve loans and determination of authority to approve loans;

r.    Senior officer authority for transactions (i.e. monetary, etc.);

s.    Junior officer authority for transactions (i.e. monetary, etc.);

t.    Monetary transactions requiring senior or junior officer authority;

u.    Discrimination, Harassment, Hostile Work Environment, and/or retaliation, including but not limited to sex discrimination; pregnancy discrimination; disability discrimination; age discrimination; FMLA discrimination; and New York State Paid Family Leave Act discrimination;

v.    Complaints;

w.    Investigation of Complaints;

x.    Communications, including communication between management and employees and between and among employees and including use of personal communications hardware and text messaging;

y.    Computer records;

z.    Paper records;

aa.    Performance;

bb.    Evaluations;

cc.    Promotion;

dd    Discipline;

ee.    Demotion;

ff.    Termination;

gg.    Leave of Absence (FMLA, Maternity Leave, Disability Leave, NYS Paid Family Leave, etc.);

hh.    Retirement;

ii.    Severance;

jj.     Employee gifts;

kk.     Compensation

ll.     Bonus Pay;

mm.     Raises;

nn.     Fringe benefits, including but not limited to: health insurance; health
savings account; pre-tax insurance premium plan; dental insurance;
optical insurance; life insurance; disability insurance; holidays; vacation
time; personal time; sick time; pension, 401k; profit sharing; stock
options; income tax preparation; cellphones; employee assistance
program; free checking account; and continuing education;

oo.     Job Site Assignment;

pp.     Job Assignment;

qq.     Job Posting;

rr.     Hours of Work;

ss.     Transfer of Jobs;

tt.     Overtime;

uu.     Record keeping;

vv.     Document retention;

ww.     Document destruction;

xx.     Technology;

yy.     Security video including but not limited to retention, archiving and
destruction;  and

zz.     Office gym usage.

**RESPONSE:   This defendants object to this demand on the grounds that it is excessively
broad, overreaching, unlimited in time and scope, and exerts an undue burden, activity,
expense and annoyance constituting harassment and oppression as to writing, subject
matter and time.  Notwithstanding the foregoing, the Alden State Bank Employee
Handbook is produce herein as <u>Exhibit H</u>  (Bates Stamped O001488-O001552 ).**

**Amendment: The defendants have also produced the Termination Policy & Procedures (bates stamped O002395-O002404) and the Disciplinary Procedures of Alden State Bank (bates stamped O002405-O002407).**

**In addition, also produced were the Records Management and Retention Policy of Alden State Bank (bates stamped O002408-O002421), the 2014 version of the Alden State Bank Employee Handbook (bates stamped O002422-O002478), the 2015 version of the Alden State Bank Employee Handbook (bates stamped O002479-O002541), the 2016 version of the Alden State Bank Employee Handbook (bates stamped O002542-O002604), the 2017 version of the Alden State Bank Employee Handbook (bates stamped O002605-O002669), and the 2018 version of the Alden State Bank Employee Handbook (bates stamped O002670-O002750), and the Alden State Bank Performance Appraisal System (bates stamped O002751-O002930).**

10.　　All memoranda or other documents regarding the training of any employees and/or members of the Board of Directors with regard to discrimination, harassment, hostile work environment, retaliation, and supervision, including but not limited to the dates of each training, notification of training, attendance list, syllabi, materials distributed, and evaluation forms.

**RESPONSE:　Acknowledgements reflecting attendance at training sessions are produced as <u>Exhibit I</u> – Bates Stamped O001553-O01721.　The acknowledgements reflect the dates of training and the nature of the courses/matters.**

**Amendment: In further response to the request, produced is the 2015 online training records for Alden State Bank employees (bates stamped O002931-O002943), the 2016 online training records for Alden State Bank employees (bates stamped O002944-O002961), the 2017 online training records for Alden State Bank employees (bates stamped O002962-O002986), and sign-in sheet for sexual harassment training that occurred on March 5, 2019 (bates stamped O002987-O002988).**

**Additionally, produced is the Bank Training Solutions catalog that was used for 2015 training (bates stamped O002989-O002991), BAI Learning Manager courses on sexual harassment/discrimination (bates stamped O002992), and a PowerPoint presentation presented by Hodgson Russ on Discrimination, Harassment, and Retention in the Workplace as created for Alden State Bank (bates stamped O002993-O003019).**

**Lastly, produced are the following affirmative action plans:**

- **October 1, 2009 to September 30, 2010 (bates stampedO003020-O003092)**

- **October 1, 2011 to September 30, 2012 (bates stamped O003093-O003159)**

- **October 1, 2012 to September 30, 2013 (bates stamped O003160-O003223)**

- **October 1, 2013 to September 30, 2014 (bates stamped O003224-O003294);**

- **October 1, 2014 to September 30, 2015 (bates stamped O003295-O003371);**

- **October 1, 2015 to September 30, 2016 (bates stamped O003372-O003442);**

- **October 1, 2016 to September 30, 2017 (bates stamped O003443-O003514);**

- **October 1, 2017 to September 30, 2018 (bates stamped O003515-O003586);**

- **October 1, 2018 to September 30, 2019 (bates stamped O003587-O003657).**

11.     All insurance agreements under which any insurance carrier may be liable to satisfy part or all of any judgment against Defendant in this action or to indemnify or reimburse Defendant for the same.

**RESPONSE:  This information was previously disclosed as part of the defendants' Rule 26 disclosure in this action.  Said policy was issued through Everest National Insurance Company.**

12.     All documents defendants identified in response to plaintiff's first set of interrogatories directed to defendants.

**RESPONSE:  As noted above, the defendants will not respond to each subpart separately as the length of the interrogatories exceeds 25 written interrogatories, including all discrete subparts, as set forth in Rule 33 of the Federal Rules of Civil Procedures.   Therefore, in response to this demand, the defendants state that all information sought has been set forth in elsewhere in this document, in response to specific demands.**

**Amendment:   See Attached Exhibit A to Amended Response to Interrogatories setting forth index of all items produced**

13.     All documents submitted by the Defendant to the EEOC or provided to the Defendants by the EEOC concerning Plaintiff's charge of discrimination.

**RESPONSE:   See the position statement and exhibits submitted to the EEOC, attached hereto as Exhibit J  Bates Stamped O001722-O001870.**

14.    All documents submitted by the Defendants to the EEOC or provided to the Defendant by the EEOC concerning Ashley Osucha's charge of discrimination.

**RESPONSE:   See Exhibit J Bates Stamped O001722-O001870 herein.   Additionally, see Response to Number 2 above.**

15.    All disclosures made to federal, state, or local agencies, including, but not limited to all EEO 1 Reports and/or any similar documents, beginning on January 1, 1974 and continuing through the conclusion of this action, referring or relating to discrimination, harassment, and/or retaliation including, but not limited to those relating to the Defendant's branches in both Alden and Lancaster.

**RESPONSE:   The defendants object to this demand on the grounds that it is overly broad in time frame and is not calculated to lead to the disclosure of relevant information. Without waiving said objection, see Exhibit J Bates Stamped O001722-O001870; Exhibit K Bates Stamped O001871-O002107 and O002108-O002118; Exhibit N O002330-O002356 herein.**

16.    All organizational charts reflecting the structure of Defendant, its Board of Directors, branches, and each of its departments, e.g., Retail, Branch Administration/Human Resources, Lending, Finance, Operations, and Teller, including but not limited to organizational and reorganizational charts and/or any document reflecting the chain of command for the Defendant from January 1, 1995 to the conclusion of this action.

**RESPONSE:   The organizational chart is contained as part of the position statement submitted to the EEOC with respect to Carolyn Sue Aldinger's discrimination complaint, in the companion action, *Carolyn Sue Aldinger v. Alden State Bank,* Case No. 1:17-cv-01024-GWC.  See Exhibit K Bates Stamped O001871-O002107 and O002108-O002118 herein.**

17.     All documents, including but not limited to any memoranda, correspondence, report, or records of or concerning the following job titles, including but not limited to: job description; job classification; wage/salary range; job posting, internal or external, or any solicitation in any manner; files maintained for each position; postings for each position; applications and resumes for each position; interview schedules and notes for each position; assessment of each applicant for the position; selection criteria for interviews and hiring for each position; notification of interview, selection, and/or rejection for each position; interview notes; the identity of any individual who held the position at any time; and payroll records reflecting the salaries, compensation, and/or benefits paid to individuals who held these positions for the period of January 1, 2003 to the conclusion of this action:

    a.      Head Teller Supervisor;

    b.      Head Teller;

    c.      Teller;

    d.      President/Chief Executive Officer;

    e.      President;

    f.      Chief Executive;

    g.      Vice President/Chief Lending Officer;

    h.      Vice President;

    i.      Chief Lending Officer;

    j.      Vice President/Branch Administrator/Human Resources/Security Officer;

    k.      Branch Administrator;

    l.      Human Resources;

    m.      Security Office;

n.      In-house counsel;

o.      Compliance Officer;

p.      Branch Manager;

1.      Branch Administrator;

r.      Assistant Branch Manager;

s.      Banking Officer;

t.      Chairman of the Board of Directors;

u.      Member of the Board of Directors;

v.      Assistant Vice President;

w.      EEO Coordinator;

x.      Mortgage Loan Specialist;

y.      Mortgage Loan Officer;

z.      Home Equity Representative;

aa.     Loan Operations Manager;

bb.     Commercial Loan Specialist; and

cc.     Proof Operator

**RESPONSE:  See the Wage  Salary Administration Program, attached as <u>Exhibit L</u>, Bates Stamped O002119-O002325 herein.**

18.     All documents regarding the investigation into any allegations of sex discrimination, pregnancy discrimination, disability discrimination, age discrimination, harassment, hostile environment, and/or retaliation including but not limited to notes, complaints, and any expressions of a desire or intent to make a complaint by Emily Koelbl, Ashley Osucha, Kaitlyn Chadbourne, Megan Bippert, Julie Osucha, Jamie Hey, Colleen Pautler, Tracy McMaster,

Robin Maier, Dawn Schimweg, Heather Zuppelli, Teresa Miranda, Danielle Wagner, Daniel

Wagner, Noel Smithers, and/or any other current or former Alden State Bank employee.

**RESPONSE:  See documents provided by Hodgson Russ produced pursuant to request to disclose all materials kept involving the investigation of the complaints made by plaintiff (O004334-O004650) and Ashley Osucha (O003682-O003691)**

19.     All documents regarding any interviews with witnesses or employees of Defendant

with regard to Plaintiff's claims and/or claims against Plaintiff, including, but not limited to all

notes, statements, and/or memoranda regarding interviews with Defendant's employees conducted

from 2013 to the conclusion of this action, including but not limited documents related to Ashley

Osucha, Richard Koelbl, John Koelbl, Steven Woodard, Mark Rieman, Hilde Neubauer, Carolyn

Sue Aldinger, Colleen Pautler, Tracy McMaster, Robin Maier, Kaitlyn Chadbourne, Julie Osucha,

Jamie Hey, Megan Bippert, Nicole Aldinger, Katherine Koelbl, Shawn Gillen, Robert Engelhart,

Christopher Gust, and Jesse Jerge.

**RESPONSE:  See Number 19 above.**

20.     All documents in Defendants' possession or control on which Defendants may rely

to support any and all of the affirmative defenses or to deny any or all of the allegations in

Plaintiff's Complaint, including those affirmative defenses specifically pleaded in defendants'

answer.

**RESPONSE:  All documents in support of the defendants' position and affirmative defenses will be provided in a timely fashion before the completion of discovery, if said documents have not already been produced.     See Exhibit A of Index of documents produced, attached to Amended Interrogatories.**

21.     All documents relating directly and/or indirectly to plaintiff complaining to

defendants about plaintiff's treatment at work, including any text messages, emails, or other

communications to, from, by and/or between RICHARD D. KOELBL and JOHN KOELBL using personal emails, messaging services, and/or communication hardware.

**RESPONSE:   Upon information and  belief, the only documents reflecting such complaints are contained in the position statement submitted to the E.E.O.C. with regard to the plaintiff's complaint.  See <u>Exhibit J</u>,  O001722-O001870 herein.**

22.    All documents relating directly and/or indirectly to any text messages, emails or other communications to, from, by and between Defendants, including both RICHARD D. KOELBL and JOHN KOELBL individually, involving communications between Defendants and any ALDEN STATE BANK female employee not specifically concerning ALDEN STATE BANK employment, including but not limited to communications regarding Defendants' efforts to, desire to, and/or intent to have a meeting, visit and/or encounter with female employees outside of ALDEN STATE BANK business hours.

**RESPONSE:  The defendants objects to this demand on the grounds that it is unduly burdensome, vague, overreaching, and seeks confidential information potentially relating to persons who are not parties to this action.  Without waiving said objections, any emails by and between employees and/or RICHARD D. KOELBL and JOHN KOELBL would be contained in the email folders produced as <u>Exhibit G</u> :**

> **Exhibit G email folder 1 (Bates stamped O000955-O001114)**
>
> **Exhibit G email folder 2 (Bates stamped O001115-O001230)**
>
> **Exhibit G email folder 3 (Bates stamped O001231-O001323)**
>
> **Exhibit G email folder 4 (Bates stamped O001324-O001482)**
>
> **Exhibit G email folder 5 (Bates stamped O001483-O001487)**

23.    Copies of all emails between agents, servants, or employees of Defendant regarding Plaintiff or events related to the instant lawsuit.

**RESPONSE:  It is believed that the communications referred to in this demand are reflected in exhibits attached to the position statement submitted to the E.E.O.C. regarding Aldinger's complaint in the companion action, *Carolyn Sue Aldinger v. Alden State Bank*, Case No. 1:17-cv-01024-GWC, and involving Ms. Aldinger's awareness of, and failure to address allegations of unfair treatment of women employees.   See <u>Exhibit K</u> - Bates Stamped O001871-O002107 and O002108-O002118 herein.**

24.     Any and all schedules, calendars, notebooks, planners, journals, and/or diaries for the period of January 1, 2008 to the conclusion of this action for the tellers and head tellers at ALDEN STATE BANK.

**RESPONSE:  The defendants object to this demand on the grounds that it seeks confidential information pertaining to individuals who are not a party to this action. Without waiving this objection, the defendants state that it is not in possession of any documents responsive to this demand.**

25.     Any and all calendars, notebooks, planners, journals, and/or diaries for the period of January 1, 2008 to the conclusion of this action for the following individuals:

1.     Ashley Osucha;
2.     Richard Koelbl;
3.     John Koelbl;
4.     Steven Woodard;
5.     Hilde Neubauer;
6.     Carolyn Sue Aldinger;
7.     Colleen Pautler;
8.     Tracy McMaster;
9.     Robin Maier;
10.    Katherine Koelbl;
11.    Nicole Aldinger;
12.    Shawn Gillen;
13.    Silvia Sweet; and
14.    Mark Rieman.

**RESPONSE:    The defendants object to this demand on the grounds that it seeks confidential information pertaining to individuals who are not a party to this action. Without waiving this objection, the defendants state that it is not in possession of any documents responsive to this demand with relation to the plaintiff herein.**

26.     Any and all documents, including but not limited to any notes, memoranda and meeting minutes regarding plaintiff's performance reviews, salary history, raises and other benefits provided by defendants to plaintiff during her entire employment with ALDEN STATE BANK through the conclusion of this action, including documents related to plaintiff's salary increase in late 2015 or early 2016.

**RESPONSE:   See plaintiff's W-2s and raise history, attached hereto as <u>Exhibit M</u>, Bates Stamped O002326-O002329.**

**<u>In further response to this request, defendants direct plaintiff to what was previously produced as Exhibit E (Personnel file A. Osucha) (bates stamped O000633-O000822).</u>**

27.     Any and all schematic drawings of ALDEN STATE BANK, including but not limited to the first floor, second floor, and basement of each of the locations of ALDEN STATE BANK.

**RESPONSE:   The Defendants object to this request as to the relevance and materiality of seeking said information as it pertains to this lawsuit.  Any documentation regarding schematic drawings bears no relevance to the matters herein.**

28.     Any and all schematic drawings of each location of ALDEN STATE BANK showing the placement, field of view and all other identifying information regarding every video camera, both interior and exterior, together with any and all information concerning the make, model, interface, software and all other similar information for each camera.

**RESPONSE: The defendants object to this demand on the grounds that it is vague, unlimited in time and scope, irrelevant to the issues and circumstances involved in this action, unduly burdensome and overreaching and not calculated to lead to the disclosure of relevant, material and admissible evidence.**

29.    Any and all documents reflecting Defendants' policy with respect to archiving of ALDEN STATE BANK camera recordings/video/footage, including but not limited to preservation policy, video format, type of servers, location of servers and ownership of servers.

**RESPONSE: The defendants object to this demand on the grounds that it is vague, unlimited in time and scope, irrelevant to the issues and circumstances involved in this action, unduly burdensome and overreaching and not calculated to lead to the disclosure of relevant, material and admissible evidence.**

30.    Any and all documents concerning the construction and/or renovation of each location of ALDEN STATE BANK, including but not limited to any discussions, communications, memoranda, notes, etc., concerning the installation of shower facilities in the bathrooms.

**RESPONSE: The defendants object to this demand on the grounds that it is vague, unlimited in time and scope, irrelevant to the issues and circumstances involved in this action, unduly burdensome and overreaching and not calculated to lead to the disclosure of relevant, material and admissible evidence.**

31.    The Affirmative Action Plan including but not limited to a copy of all yearly acknowledgements signed by all Executive officers approving the Affirmative Action Plan and the Affirmative Action Plan chapter page including Richard Koelbl's signature acknowledging that he read and approved of the plan for the period of January 1, 1974 to the conclusion of this action.

**RESPONSE:  The defendants are unable to respond to this demand in its current form on the grounds that it is vague.  Furthermore, it is overreaching in terms of the time frame.  Notwithstanding the foregoing, see the attached E.E.O. Employer Reports, attached hereto as <u>Exhibit N</u>, Bates Stamped O002330-O002356 herein.**

32.    All Alden State Bank employee handbooks and any updates to employee handbooks from the period of January 1, 1995 to the conclusion of this action.

**RESPONSE:  See <u>Exhibit H</u> Bates Stamped O001488-O001552 herein.  <u>Also, See Response to Number 9, above.</u>**

25077750.v1

33.     All documents of or concerning proposed changes in employee hourly rates and

salaries for the period of January 1, 2008 to the conclusion of this action.

**RESPONSE:  See the Wage & Salary Administration Program, attached hereto as Exhibit L Bates Stamped O002119-O002325 herein.**

34.     All documents relative to the determination of compensation of ALDEN STATE

BANK Executive Officers for the period of January 1, 2008 to the conclusion of this action,

including but not limited to the notes and minutes of ALDEN STATE BANK Board of

Directors, noes and minutes of any ALDEN STATE BANK Compensation Committee Meeting,

recommendations for compensation changes by Executive Officers, and approvals of

compensation changes for Executive Officers.

**RESPONSE: The defendants object to this demand on the grounds that it is vague, unlimited in time and scope, irrelevant and immaterial to the issues and circumstances involved in this action, unduly burdensome and overreaching and not calculated to lead to the disclosure of admissible evidence.**

35.     All agendas, attendance records, training records, notes, minutes and resolutions of

the ALDEN STATE BANK Board of Directors, ALDEN STATE BANK Board Compensation

Committee, and ALDEN STATE BANK Board Audit Committee for the period of January 1, 2008

to the conclusion of this action.

**RESPONSE: The defendants object to this demand on the grounds that it is vague, unlimited in time and scope, irrelevant to the issues and circumstances involved in this action, unduly burdensome and overreaching, seeks confidential and proprietary information, and not calculated to lead to the disclosure of relevant, material and admissible evidence.**

36.     All documents regarding all Whistle Blower Complaints/Incidents for the period of

January 1, 2003 to the conclusion of this action involving any Alden State Bank employee and/or

member of the Alden State Bank Board of Directors, including but not limited to complaints, incident reports, notes, and/or determinations.

**RESPONSE:  The Defendants object to this demand on the grounds that it is overly broad and overreaching.  Notwithstanding the foregoing, Whistleblower memoranda dated 9/5/14 and 9/8/14 are attached hereto as <u>Exhibit O</u> Bates Stamped O002357-O002359.**

**<u>In further response to this request, produced is a whistleblower memorandum, dated September 10, 2008 (bates stamped O003658), a whistleblower memorandum, dated September 26, 2008 (bates stamped O003659), a whistleblower memorandum, dated June 30, 2017 (bates stamped O003660), Audit Committee Meeting Notes from a meeting that took place on June 22, 2017 (bates stamped O003661-O3663), and the Alden State Bank Whistleblower policy (bates stamped O003664-O003667).</u>**

37.    All documents maintained by ALDEN STATE BANK demonstrating what individuals or entities own stock or other interests in ALDEN STATE BANK, including demonstrating the amount of interest held, when such interest was issued and, if the interest has changed over time, when and how.

**RESPONSE: The defendants object to this demand on the grounds that it is irrelevant and immaterial to the issues and circumstances involved in this action, unduly burdensome and overreaching, seeks confidential and proprietary information, is unlimited in time and scope, and is not calculated to lead to the disclosure of relevant, material and admissible evidence.**

38.    All Alden State Bank Health Insurance policies available to employees from for the period of January 1, 2008 to the conclusion of this action, including but not limited to the policies, invoices for premiums for such policies, and proof of payment of such premiums for such policies.

**RESPONSE:  The defendants object to this demand on the grounds that it is irrelevant, immaterial, seeks confidential and proprietary information and is not discoverable.**

39.     All documents demonstrating the ALDEN STATE BANK employee

contributions and defendants' contributions to the ALDEN STATE BANK Health Insurance

Premium for each employee for the period of January 1, 2003 to the conclusion of this action.

**RESPONSE: The defendants object to this demand on the grounds that it is irrelevant and immaterial to the issues and circumstances involved in this action, unduly burdensome and overreaching, seeks confidential and proprietary information, is unlimited in time and scope, and is not calculated to lead to the disclosure of relevant, material and admissible evidence.**

40.     All documents of or concerning any and all life insurance policies taken out by

and/or paid for by Alden State Bank for any and all Alden State Bank officers for the period of

January 1, 2008 to the conclusion of this action, including but not limited to the policies, invoices

for premiums for such policies, and proof of payment of such premiums for such policies.

**RESPONSE:  The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

41.     All documents of or concerning any 401k Plan(s) at Alden State Bank available to

employees for the period of January 1, 1995 to the conclusion of this action, including but not

limited to the 401k Plan, selection of the 401k vendor, the 401k administrator(s), monitoring of

401k investments, complaints relative to the 401k vendor, communications between Defendant

and any 401k vendor, any amendments, and payroll posting 401k reports.

**RESPONSE:  The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

42.     All documents of or concerning any Health Savings Account at Alden State Bank

available to employees for the period of January 1, 2008 to the conclusion of this action, including

but not limited to the Health Savings Account Plan(s), Health Savings Account Plan records showing annual amounts given to employees, Alden State Bank Board minutes and/or documents reflecting approval of Alden State Bank Health Savings Account contributions.

**RESPONSE:   The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

43.    All documents of or concerning any Employee Assistance Program at Alden State Bank available to employees for the period of January 1, 2008 to the conclusion of this action, including but not limited to the materials distributed to employees regarding the Employee Assistance Program and the training of officers, supervisors, and all employees regarding harassment, discrimination, and /or violence prevention in the workplace.

**RESPONSE:  See Exhibit P, Bates Stamped O002360-O002388 attached, the ESI Group Employee Assistance Program materials.**

44.    All documents reflecting the monetary value of a free Alden State Bank Checking Account available to employees for the period of January 1, 2008 to the conclusion of this action, including but not limited cost of checks, service fees, and ATM fees.

**RESPONSE:    The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

45.    All documents of or concerning any continuing education courses at Alden State Bank available to for the period of January 1, 2008 to the conclusion of this action, including but

not limited to course materials, transcript of course completion, invoice for such course, and payment records reflecting the cost of the course.

**RESPONSE: The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

46.     All documents of or concerning any and all disability insurance or self-insurance policies provided by Alden State Bank for Alden State Bank employees for the period of January 1, 2008 to the conclusion of this action, including but not limited to the policies, invoices for premiums for such policies, and proof of payment of such premiums for such policies.

**RESPONSE:   The defendants object to this demand on the grounds that it is irrelevant and immaterial, seeks confidential and proprietary information and is not discoverable.**

47.     Copies of all memoranda, retainer agreements, scope of work agreements, acknowledgements of representation, and any other documents and communications concerning and reflecting Hodgson Russ, LLP's, or any other law firm or outside counsel's involvement in matters relevant to this action, including but not limited to investigation into complaints made by plaintiff and any other ALDEN STATE BANK employees concerning discrimination, retaliation, and hostile work environment for the period January 1, 1974 to the conclusion of this action.

**RESPONSE:  See Hodgson Russ file on Osucha (O003682-O003691)  and Aldinger (O004334-O004650)**

48.     All documents of or concerning whether any defendant, either individually, through ALDEN STATE BANK, or through any third party or other agent has ever made any payment to any individual, individuals, or group in order to resolve and/or settle any allegations, claims, lawsuits, and/or proceedings regarding discrimination, harassment, and/or retaliation, including

any and all confidential settlement agreements and non-disclosure agreements, for the period of January 1, 1974 through the conclusion of this action.

**RESPONSE:   The defendants object to this demand on the grounds that it is overreaching, unduly burdensome, and excessively broad in time and scope.   Without waiving the foregoing objection, the defendants state that, upon information and belief, there have been no such settlements and there are no documents responsive to this demand.**

49.     All documents of or concerning each and every instance and circumstance in which RICHARD D. KOELBL or JOHN KOELBL had a one-on-one interaction with a female ALDEN STATE BANK employee outside of ALDEN STATE BANK working hours, including any restaurant receipts/checks, hotel (or other similar lodging) receipts, bank statements, credit card statements, expense reports, notes, and/or memoranda, including records and documents help personally by RICHARD D. KOELBL and JOHN KOELBL.

**RESPONSE:   The defendants object to this demand on the grounds that it is unduly burdensome, overreaching and excessively broad.   Notwithstanding the foregoing objection, there are no such documents in the defendants' possession.**

50.     Any and all documents, including pleadings, motions, decisions, orders, judgments, index numbers, etc. concerning RICHARD KOELBL's divorce and his relationship with a female employee of ALDEN STATE BANK, including any documents showing or stating the legal grounds for such divorce.

**RESPONSE:   The defendants object to this demand on the grounds that it seeks confidential information, is overreaching and irrelevant.   Notwithstanding the foregoing objection, there are no such documents in the defendants' possession.**

51.     Documents demonstrating the qualifications needed to be a member of the Alden State Bank Board of Directors, the names of all members of the Alden State Bank Board of Directors, the qualifications of each member of the Alden State Bank Board of Directors, and the

period of time each member held such position as an Alden State Bank Board Director for the period from the inception of the Alden State Bank Board of Directors to the conclusion of this action, including but not limited to description of the position of member of the Alden State Bank Board of Directors, Alden State Bank Board of Directors minutes, resumes of potential and new members of the Alden State Bank Board of Directors, press releases announcing new members of the Alden State Bank Board of Directors, determination by Alden State Bank Board of Directors to offer board position to potential board member; offer by Alden State Bank Board of Directors of board position to potential board member, and resignation (voluntary or involuntary) as a member of the Alden State Bank Board of Directors.

**RESPONSE:  Produced is the biography of Susan Rodgers, the newest member of the Board of Directors at Alden State Bank (bates stamped O003668).  The list of current Board of Directors at Alden State Bank (bates stamped O003669) is also enclosed.  The Bylaws for Alden State Bank's Stockholders (bates stamped O003670-O003681)**

52.     Any and all documents showing proof of purchase for JOHN KOELBL's purchase of sponge candy in Spring 2015, including but not limited to from Henry's Candy & Gifts, including but not limited to receipts, bank statements, credit card statements and/or expense statements.

**RESPONSE:     The defendants object to this demand on the grounds that it is irrelevant, immaterial and not calculated to lead to the disclosure of admissible evidence.**

53.     All documents, tape recordings, videotape recordings, memorializing in any way recording or reflecting any words, actions, depictions, statements, declarations, conversations or other communications concerning dinners involving JOHN KOELBL and ALDEN STATE BANK employees (including but not limited to members of his department) which were paid for by ALDEN STATE BANK, including a list of attendees, receipts, invoices, bank statements, credit

25077750.v1

card statements, expense reports, and/or any and all communications with plaintiff, from Plaintiff's entire employment through the conclusion of this action.

**RESPONSE: There are no documents responsive to this demand in the defendants' possession.**

54.    All documents, tape recordings, videotape recordings, memorializing in any way recording or reflecting any words, actions, depictions, statements, declarations, conversations or other communications concerning dinners involving RICHARD KOELBL and ALDEN STATE BANK employees which were paid for by ALDEN STATE BANK, including a list of attendees, receipts, invoices, bank statements, credit card statements, expense reports, and/or any and all communications with plaintiff, from plaintiff's entire employment through the conclusion of this action.

**RESPONSE: There are no documents responsive to this demand in the defendants' possession.**

55.    With respect to Paragraph 17 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes, and investigation interview notes concerning that from on or about 2011 until sometime in August 2015, approximately a few times a week JOHN KOELBL would tell plaintiff "You're beautiful", "Wow", or would mouth the word "Wow". This occurred in the Head Teller Room, on the Teller Line or if plaintiff went to his office for anything.

**RESPONSE: There are no documents responsive to this demand in the defendants' possession.**

56.    With respect to Paragraph 18 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning

that from on or about 2011 until sometime in August 2015, approximately a couple times a week JOHN KOELBL and RICHARD D. KOELBL would look Plaintiff up and down.  If Plaintiff wore a skirt or dress this conduct occurred more frequently.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

57.    With respect to Paragraph 19 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that from on or about 2011 until sometime in August 2015, approximately a couple times a week JOHN KOELBL and RICHARD D. KOELBL would watch Plaintiff as she walked away, making her feel like their eyes were fixed on her.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

58.    With respect to Paragraph 20 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that from on or about 2011 until sometime in August 2015, JOHN KOELBL asked MS. OSUCHA out to dinner approximately once a month;   plaintiff repeatedly refused the invitation.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

59.    With respect to Paragraph 21 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during summer 2012, RICHARD D. KOELBL came in the Head Teller Room. While there, he moved forward, put his foot in between Plaintiff's legs as she was standing up

while wearing a skirt, and said that maybe he could see up her skirt with his shiny shoes;  Plaintiff backed up away from him.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

60.   With respect to Paragraph 22 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during late 2012 while Plaintiff was working downstairs at the ALDEN  STATE BANK, JOHN KOELBL went downstairs, grabber her arm and tried to kiss her.  Plaintiff ran away from him up the stairs.  Plaintiff was offended by this conduct and since then, she would not go to the basement alone because she is afraid of being trapped alone in the basement with JOHN KOELBL.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

61.   With respect to Paragraph 23 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in late 2012, Plaintiff told Sylvia Sweet, her Head Teller Supervisor, that she refused to do mandatory online classes downstairs because JOHN KOELBL and RICHARD D. KOELBL could come in the room where she was alone and make her uncomfortable.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

62.   With respect to Paragraph 24 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during the spring 2013, RICHARD D. KOELBL came into the Head Teller Room and told

Plaintiff that he has money and he has what she needs and she has what he wants; plaintiff ignored him.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

63.     With respect to Paragraph 25 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during the summer 2013, RICHARD D. KOELBL said to Plaintiff while she was in his office on a work related matter that he has money and he has what she needs and she has what he wants; Plaintiff walked out of RICHARD D. KOELBL's office.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

64.     With respect to Paragraph 26 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during the winter 2013, Plaintiff purchased and wore a purple sweater dress to work.  When she wore it RICHARD D. KOELBL told her that it clung to her in all the right places.  After wearing the purple sweater dress approximately four times, Plaintiff stopped wearing it, because his comments made her uncomfortable wearing it.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

65.     With respect to Paragraph 27 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during the spring 2014, JOHN KOELBL stood behind Plaintiff while she was standing behind the reception desk wearing a skirt and said he would like to lick her from her ankles and work his

way up.  JOHN KOELBL then reached as if to get something off of her shirt and  Plaintiff told

him not to touch her.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

66.     With respect to Paragraph 28 of the Complaint, provide all documents, letters,

notes, memorandum, complaints, investigation notes and investigation interview notes concerning

that in or about September 2014, Plaintiff was being trained as a Proof Operator.  As a result she

would have been one of the last employees at the end of the night to leave the ALDEN STATE

BANK.  Plaintiff told Robin Maier, Teller Supervisor, that she was not comfortable if RICHARD

D. KOELBL and JOHN KOELBL knew she was going to be alone at night, because they would

also be there and bother her.  In response, Ms. Maier waited at the door while Plaintiff went to her

car.  While waiting at the door, Ms. Maier heard both RICHARD D. KOELBL and JOHN

KOELBL wolf whistle at Plaintiff.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

67.     With respect to Paragraph 29 of the Complaint, provide all documents, letters,

notes, memorandum, complaints, investigation notes and investigation interview notes concerning

that during fall 2014, on a day that ALDEN STATE BANK employees were allowed to wear jeans,

JOHN KOELBL told plaintiff while she was sitting in the Head Teller Room that he loved how

the jeans clung to her body and he would love to peel them off of her.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

68.    With respect to Paragraph 30 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in early 2015, JOHN KOELBL said in the presence of RICHARD D. KOELBL that they are going to harass Plaintiff if she started looking better with age.  Plaintiff said "Don't you harass me already?"  RICHARD D. KOELBL replied that is only harassment if you don't like it.  Plaintiff was disgusted and walked out.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

69.    With respect to Paragraph 31 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during winter of 2015, Plaintiff was outside ALDEN STATE BANK after work scraping snow off her car getting ready to drive home.  JOHN KOELBL was walking toward the bank and told Plaintiff that, if he and Plaintiff lived together, he could scrape the snow off the car, and she could reward him afterwards.  Plaintiff stopped brushing the snow off her car, got in her car and drove away.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

70.    With respect to Paragraph 32 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during winter 2015 on several occasions JOHN KOELBL asked Jaimie Hey, an approximately 22 year old female employee of ALDEN STATE BANK who held the position of Head Teller, to send him naked pictures of her.  Jaimie Hey told plaintiff she was offended by defendant JOHN KOELBL'S conduct.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

71.    With respect to Paragraph 33 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during March 2015, when Plaintiff was in the Head Teller Room, JOHN KOELBL kept coming in and out and would not leave her alone.  On one occasion on this day, plaintiff got up and left the Head Teller Room and went into the vault.  When she returned JOHN KOELBL was not there.  When JOHN KOELBL came back into the Head Teller Room, her head was resting on her hand and JOHN KOELBL said to her "Where your arm is I dropped my pants and had my wang out when you were away."  Plaintiff shook her head "no" and kept working.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

72.    With respect to Paragraph 34 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during spring 2015, plaintiff and Jaimie Hey were in the Head Teller Room.  JOHN KOELBL came in because Plaintiff needed his initials on a document.  JOHN KOELBL grabbed her hand. Plaintiff said "Don't touch me."  JOHN KOELBL said "If I was going to touch you I wouldn't touch you tere."  JOHN KOELBL left and then came back in the room and said "I can't believe I just said that in front of a witness."  When she returned to work following her lunch break, Jaimie Hey said that JOHN KOELBL left a bag of sponge candy for each of them.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

73.    With respect to Paragraph 35 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning

that in or about April 2015, Plaintiff was walking out of ALDEN STATE BANK and walking to her car on her lunch break.  RICHARD D. KOELBL was walking back into the bank from lunch. RICHARD D. KOELBL asked Plaintiff if JOHN KOELBL was naked in the backseat of her car would she leave or call the cops?  Plaintiff replied "Good thing I keep my doors locked."  She got in her car and left.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

74.     With respect to Paragraph 36 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in or about May/June 2015, while she was standing behind the reception desk, JOHN KOELBL said to plaintiff that RICHARD D. KOELBL saw JOHN KOELBL in workout clothes and asked JOHN KOELBL if he was running the track or running in the streets.  JOHN KOELBL said he was running the woods so he could whack off.  RICHARD D. KOELBL asked JOHN KOELBL if Plaintiff was working that day.  Plaintiff responded sarcastically that she was sure that this was RICHARD KOELBL'S first question.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

75.     With respect to Paragraph 37 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in or about June 2015, while plaintiff was in the Head Teller Room, JOHN KOELBL stood at the door and said "Hurry up and flash me, Sue Aldinger's computer screen is off."  Plaintiff said, "No, that's not going to happen."

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

76.     With respect to Paragraph 38 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on a few occasions in 2014 and 2015, RICHARD D. KOELBL when about to sign a check, suggestively asked plaintiff if she would prefer "Top" or "Bottom".  Each time she ignored his sexual innuendo and replied that if it is a large check a senior officer signs the top line;  if it is a small check only plaintiff signs the top line.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

77.     With respect to Paragraph 39 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that approximately monthly in 2015 until September 2015, JOHN KOELBL would hold a dinner within his department.  Although she was not in JOHN KOELBL's department, he would ask Plaintiff to go to dinner.  She refused his repeated offers.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

78.     With respect to Paragraph 40 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in June 2015 a position as Home Equity Representative opened at ALDEN STATE BANK. This position directly reported to JOHN KOELBL.  Robin Maier and Carolyn Sue Aldinger asked Plaintiff if she wanted to apply for the position.  Plaintiff did not apply because she was uncomfortable and fearful working for JOHN KOELBL due to his inappropriate conduct toward her.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

79.     With respect to Paragraph 41 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on or about June 24, 2015, Plaintiff was walking through the parking lot on her way home from her Grandmother's house.   JOHN KOELBL was in his car, saw her, drove up to her and asked if he could pick her up and take her out that night.   Plaintiff said no and continued to walk home.

**RESPONSE:   There are no documents responsive to this demand in the defendants' possession.**

80.     With respect to Paragraph 42 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on or about June 26, 2015, when Plaintiff was on her way home from the ALDEN Fireman Carnival, JOHN KOELBL stopped her and asked her if she wanted to go somewhere for a drink. Although she said no, he kept asking her the same question.   Finally, Plaintiff's brother, who was ahead of her, turned around and told JOHN KOELBL "No"- she was going home with her brother.

**RESPONSE:   There are no documents responsive to this demand in the defendants' possession.**

81.     With respect to Paragraph 43 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in July 2015 while she was at her station in the Teller Line, JOHN KOELBL told plaintiff, "I thought Brooke [referring to Plaintiff's five year old daughter] said the other day that she has a good judge of character and I'm the one for you – I know I may act like I only want to sleep with you but I really like you."   Plaintiff replied, "No, Brooke wouldn't say anything like that, she is only 5 years old."

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

82.     With respect to Paragraph 44 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that in or about July 2015, JOHN KOELBL said to Plaintiff that he saw that she was in the newspaper for flashing a cop.  Plaintiff said that she wasn't.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

83.     With respect to Paragraph 45 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that JOHN KOELBL has followed Plaintiff home a number of times.  The last time was on July 4, 2015.  Plaintiff was driving home that day and noticed JOHN KOELBL was behind her car in his car.  After she pulled into her parking spot and got her daughter out of the car, she noticed that JOHN KOELBL had pulled his car behind hers.  He asked her if she wanted to do something. Plaintiff asked him why he wasn't spending the day with his family, and he said that they all had other plans.  Plaintiff told him that she had plans and went into her apartment.  Plaintiff did not leave her apartment that day in fear that JOHN KOELBL would see her or would be waiting for her outside her apartment.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

84.     With respect to Paragraph 46 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that Jaimie Hey told Plaintiff that in July/August 2015, JOHN KOELBL came into the Head Teller

Room and asked Jaimie Hey what kind of alcohol beverages she liked.  When she replied that she liked "anything fruity", JOHN KOELBL responded the he would like to eat fruit off her naked body.  Jaimie Hey was offended by JOHN KOELBL'S comment.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

85.     With respect to Paragraph 47 – 50 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that during on or about August 6, 2015, while Plaintiff was in Colleen Pautler's office in the presence of Carolyn Sue Aldinger, RICHARD D. KOELBL walked in and said that JOHN KOELBL called RICHARD D. KOELBL the night before and asked if he wanted to go out for a drink.  RICHARD D. KOELBL responded that Ashley Osucha is coming over to go swimming with me.  JOHN KOELBL said "Okay, I'll be right over."  Plaintiff was offended by RICHARD D. KOELBL's conduct and looked at Colleen Pautler and shook her head.  Ms. Aldinger walked out appearing upset at what had occurred.  RICHARD D. KOELBL said to Ms. Pautler and Plaintiff that JOHN KOELBL and he always joke about Plaintiff and it's in good fun.  Plaintiff did not respond.  When RICHARD D. KOELBL left, Ms. Aldinger returned and asked Plaintiff what that exchange was about.  Plaintiff told Ms. Aldinger that it happens all the time.  Ms. Aldinger told Plaintiff to get a notebook and document what was said to her.  The next day Ms. Aldinger told Plaintiff that RICHARD D. KOELBL's comments were inappropriate and he said he would apologize.  RICHARD D. KOELBL

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

86.     With respect to Paragraph 51 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that ON OR ABOUT August 7, 2015 JOHN KOELBL asked Plaintiff if she wanted to go out with him the following Wednesday, August 12, 2015.  She said "no."

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

87.     With respect to Paragraph 59 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on November 13, 2015 Plaintiff wore her purple sweater dress to work.  When JOHN KOELBL saw her in it he did a double take look at her making her uncomfortable.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

88.     With respect to Paragraph 60 of the Complaint, provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on November 23, 2015 Plaintiff needed an Officer's initials and went into RICHARD D. KOELBL's office.  When  she was sanding next to RICHARD D. KOELBL he asked her what she was wearing; if it was vanilla.  When Plaintiff told him it was her lotion, RICHARD D. KOELBL told her that he really liked it.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

89.     Provide all documents, letters, notes, memorandum, complaints, investigation notes and investigation interview notes concerning that on or about December 7, 2017, Jaimie Hey was asked by a male employee to button the button on the back of his shirt to keep his collar down.

She was standing on the stairs one step ahead of him with him turned with his back to her and she began to button the button when RICHARD D. KOELBL walked through the door and said "Ohh … I wondered what was going on here."  RICHARD D. KOELBL patted the male employee on the shoulder and said "Good job.  Too bad you weren't turned around the other way", which would place the male employee's face in Ms. Hey's chest.

**RESPONSE:  There are no documents responsive to this demand in the defendants' possession.**

The Defendants continue to reserve their right to supplement this disclosure during the course of litigation and upon the completion of all discovery herein.

DATED:       Buffalo, New York
              January 10, 2020


                                        Julie P. Apter, Esq.
                                        GOLDBERG SEGALLA LLP
                                        *Attorneys for Defendants*
                                        665 Main Street
                                        Buffalo, New York  14203
                                        (716) 566-5400
                                        japter@goldbergsegalla.com


TO:    Josephine A. Greco, Esq.
       GRECO TRAPP, PLLC
       *Attorneys for Plaintiff*
       1700 Rand Building
       14 Lafayette Square
       Buffalo, New York  14203
       (716) 856-5800
       jgreco@grecolawyers.com


25077750.v1