# EXHIBIT F



**M E M O R A N D U M   F R O M**

**Elizabeth D. Carlson, Esq.**
716.848.1530
Email: *ECarlson@hodgsonruss.com*

ATTORNEY-CLIENT PRIVILEGE
CONFIDENTIAL

**To:**  Alden State Bank

**Date:**  September 1, 2015

**Subject:**  Personnel Investigation

This memorandum summarizes various options the Bank of Alden ("the Bank") may pursue in relation to a recent personnel investigation, and the legal ramifications that the Bank may be exposed to if a successful sexual harassment and discrimination lawsuit is filed .

**A.**  **Overview and Purpose of the Meeting**

**B.**  **Next Steps**

1. *Reformation of the Bank's Culture*

   - Emphasis on open door policy, not sexual harassment per se
   - Supervisors should be trained on sexual harassment
   - Outside consultants may be engaged by the Bank to assist the Bank in developing a new mantra and rolling out the new "culture"
   - Board members should attend announcement or formal presentation of the new "culture" to ensure the employees understand the Bank's leadership supports the new culture

2. *Training of Supervisors*

   - Training regarding general reporting obligations, with an emphasis on reporting suspected unlawful activity, such as sexual harassment

   - Training may be done by a third-party provider

     o Collaboration with counsel is encouraged throughout the process, however, should questions or issues arise during the training.

   - Training by Bank counsel

     o Privilege will not apply to information shared by Bank employees

     o Counsel will have to affirmatively notify Supervisors that counsel does not represent them individually in regards to the training

- o Advantage of having Bank counsel do the training, however, is to keep counsel informed of employees' sentiments

**3. *Training and Counseling of the Bank's Senior Leadership***

- Discussion with the Board concerning the complaints and the investigation

- Training may be done by third-party provider or Bank counsel. Attorney-client privilege will apply to legal advice from Bank counsel to Bank Leaders. Privilege will not apply to factual matters. Privilege is the Bank's; it may be waived by individual Bank Leaders.

**C.**     **Exposure of Employers Generally in Lawsuits Based on Sexual Harassment**

*a. Hostile Work Environment Harassment*

- Hostile work environment claims arise when an employee alleges that the workplace is characterized by harassment that is:

  - Unwelcome.

  - Because of protected class status.

  - Attributable to the employer.

  - Severe or pervasive enough to change the conditions of employment and create an abusive environment, judged by both: (a) an objective standard (that is, any reasonable person would find the conduct abusive); and (b) a subjective standard (that is, the employee in question found the conduct abusive).

- Employers are generally also liable for HWE harassment by supervisors under agency principles. However, in certain cases employers can escape liability by asserting the *Faragher-Ellerth* defense. To assert this defense, employers must be able to show that:

    - No tangible adverse employment action was taken against the plaintiff.
    - The employer exercised reasonable care to prevent and promptly correct the harassing behavior.
    - The plaintiff employee unreasonably failed to take advantage of any preventative or corrective

O003683

opportunities provided by the employer or to otherwise avoid the harm.

This narrow defense is meant to protect employers that do everything they can to prevent workplace harassment. Regardless of these efforts, however, the defense is not available if a supervisor's harassment results in a tangible employment action against the harassed individual. In addition, the defense may not be available if the person accused of the harassment is so senior to the company that he serves as a proxy for the company

b. *Quid Pro Quo Harassment*

- Quid pro quo means "this for that" and applies where a supervisor seeks sexual favors in return for a job benefit or to a void a job detriment

- To make a prima facie case of quid pro quo harassment, an employee must prove: (a) He is a member of a protected group; (b) Unwelcomed sexual advances were made; (c) The harassment was sexually motivated; (d) The plaintiff's reaction to the advances negatively affected tangible aspects of his employment (such as compensation or other terms, conditions or privileges of employment); and (e) the harasser had authority over the harassed employee, by virtue of being his supervisor, in his chain of command or otherwise able to influence the terms and conditions of his employment

- Quid pro quo harassment requires a tangible employment consequence of refusing to submit to a harasser's demands

- Under a quid pro quo harassment theory, the employer is strictly liable for the harassing behavior because the supervisor with the ability to carry out the tangible adverse employment action is considered to have been acting as an agent of the employer, who has provided them with authority to make employment decisions

c. *Exposure Depends on the Forum in which the Claim is Filed*

*Equal Employment Opportunity Commission (EEOC)*

- Cease and desist order by the EEOC
- Wages and benefits – front and back pay to Complainant

- Compensatory damages – pay victims for out of pocket expenses caused by the discrimination and compensate them for any emotional harm suffered
    - o There are limits on the amount of compensatory and punitive damages a person can recover. These limits vary depending on the size of the employer. For employers with 15-100 employees, the limit is $50,000.
- Punitive damages
- Attorney's fees, expert witness fees, and court costs

### State Division of Human Rights (SDHR)

- Cease and desist order and the SDHR will require periodic reports from the employer, affirming that the employer is abiding by the cease and desist
- Hiring, reinstatement or upgrading of employees, with or without back pay,
- Awarding of compensatory damages
- Assessing civil fines and penalties $50,000 - $100,000
- Requiring a report of the manner of compliance.

**D.**      **Retaliation**



**ATTORNEY WORK PRODUCT**
**PRIVILEGED AND CONFIDENTIAL**

## ALDEN STATE BANK - MEETING AGENDA

Tuesday – August 25, 2015
5:00 P.M. Lancaster Office of the Bank

### 1. Overview of the Matter

    a. August 13, 2015 (Thursday) Ashley Osucha meets with Sue Aldinger
    b. August 13, 2015 (Thursday) Kaitlyn Chadbourne meets with Sue
    c. SUE was off from work on Friday. On Monday, she did not have a chance to talk to Hilde. She was also off from work on Tuesday.
    d. August 19 (Wednesday) Hilde and Sue meet with Kaitlyn
    e. August 19 (Wednesday) Hide and Sue meet with Ashley
    f. August 19, 2015 (Wednesday) our first notice

### 2. The investigation

    *a. Interviews*
        i. Interviews commenced August 20, 2015 (Thursday) in Alden
        ii. Interviews ended August 25 (Tuesday) in Alden

    *b. Document review*

    *c. Video and e-mail*

### 3. Findings of the investigation

### 4. Exposure

    *a. Equal Employment Opportunity Commission*
        i. Cease and desist
        ii. Wages and benefits – front and back pay
        iii. Compensatory damages – pay victims for out of pocket expenses caused by the discrimination and compensate them for any emotional harm suffered
            1. There are limits on the amount of compensatory and punitive damages a person can recover. These limits vary depending on the size of the employer. For employers with 15-100 employees, the limit is $50,000.
        iv. Punitive damages
        v. Attorney's fees, expert witness fees, and court costs

O003686

    b.  *State Division of Human Rights*
        i.   Cease and desist
       ii.   Hiring, reinstatement or upgrading of employees, with or without back pay,
      iii.   Awarding of compensatory damages
      iv.   Assessing civil fines and penalties $50,000 - $100,000
       v.   Requiring a report of the manner of compliance.

    c.  *Court litigation*

## 5. **Recommendations**

    a.  Meeting with John and Dick Koelbl to discuss the results of the investigation
    b.  Meeting with Complainant to discuss the results of the investigation – to be done by the attorney in order to minimize exposure to retaliation claims or further claims by Complainant
    c.  Individualized Training – Koelbl and supervisory employees, but training to be done separately
    d.  Training for all employees
    e.  Other potential measures

## 6. **Other Issues**

    a.  Documenting
    b.  Retaliation

O003687

## QUESTIONS FOR DICK

1. Did you ever say to Ashley that she looks nice?
2. Did you give a children's kitchen playset to Ashley? Did she come to your house to pick it up? Did she come with her mother? After that, did you ever say to her, "why did you come with your mother, if you'd come alone, we could've had some fun."
3. Ashley was pregnant, at some point while she worked at the Bank, correct? Did you say to her that pregnant women excite you?
4. Did you tell her that you liked how one particular sweater dress clung to her body
5. Is it correct that Ashley comes to you for approval for certain financial transactions. And is it correct that there is a line for you to sign, and another line for her to sign? Did you ask her, whether she prefers the top or the bottom?
6. In the spring time, did you or Jack say to Ashley "if you continue to look better with age, you were going to start harassing her." Allegedly, Ashley responded, don't you already harass me? And did you say to her, it is only harassment if you don't like it.
7. Have you ever invited Ashley to your house to swim in your pool?
8. Did you ever whistle or make cat calls at Ashley or any other female employee of the Bank?

## QUESTIONS FOR JACK

1. Did you ever tell Ashley that you would like to lick her starting at her toes and work her way up
2. Did you ever invite Ashley to go to a hotel room with you
3. Did you ever try to kiss Ashley in the basement of the bank
4. Did you ever send Ashley text messages
5. Did you ever send Ashley text messages that say "I love you"
6. Did you ever follow Ashely to her house?
7. Did you see Ashley on the Fourth of July of this year? When? Did you go to her house on the Fourth of July and invite her to do "something" with you?
8. Did you try to kiss Ashley in a bar, called Darrow's? (summer 2012)
9. Have you ever put flowers on Ashley's car?
10. Have you offered her money to buy something nice for her daughter?
11. In the spring time, did you or Dick say to Ashley "if you continue to look better with age, you were going to start harassing her." Allegedly, Ashley responded, don't you already harass me?
12. This year, sometime in January or February, was there a time that you went up to Ashley while she was in the parking lot cleaning the snow off her car, and you said to her, "if you and Ashley lived together, you would brush the snow off her car every day and that she would repay you afterwards?"
13. Did you ever whistle or make cat calls at Ashley or any other female employee of the Bank?

O003688



**MEMORANDUM FROM**

**Emina Poricanin, Esq.**
716.848.1336
Email: *EPorican@hodgsonruss.com*

ATTORNEY-CLIENT PRIVILEGE
CONFIDENTIAL

**To:**      Alden State Bank

**Date:**    September 22, 2015

**Subject:** Training

**A.**    **Exposure of Employers Generally in Lawsuits Based on Sexual Harassment**

    *a.* *Hostile Work Environment Harassment*

- Hostile work environment claims arise when an employee alleges that the workplace is characterized by harassment that is:

    - Unwelcome.

    - Because of protected class status.

    - Attributable to the employer.

    - Severe or pervasive enough to change the conditions of employment and create an abusive environment, judged by both: (a) an objective standard (that is, any reasonable person would find the conduct abusive); and (b) a subjective standard (that is, the employee in question found the conduct abusive).

- Employers are generally also liable for HWE harassment by supervisors under agency principles. However, in certain cases employers can escape liability by asserting the *Faragher-Ellerth* defense. To assert this defense, employers must be able to show that:

    - No tangible adverse employment action was taken against the plaintiff.
    - The employer exercised reasonable care to prevent and promptly correct the harassing behavior.
    - The plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid the harm.

O003689

This narrow defense is meant to protect employers that do everything they can to prevent workplace harassment. Regardless of these efforts, however, the defense is not available if a supervisor's harassment results in a tangible employment action against the harassed individual. In addition, the defense may not be available if the person accused of the harassment is so senior to the company that he serves as a proxy for the company

b. *Quid Pro Quo Harassment*

- Quid pro quo means "this for that" and applies where a supervisor seeks sexual favors in return for a job benefit or to a void a job detriment

- To make a prima facie case of quid pro quo harassment, an employee must prove: (a) He is a member of a protected group; (b) Unwelcomed sexual advances were made; (c) The harassment was sexually motivated; (d) The plaintiff's reaction to the advances negatively affected tangible aspects of his employment (such as compensation or other terms, conditions or privileges of employment); and (e) the harasser had authority over the harassed employee, by virtue of being his supervisor, in his chain of command or otherwise able to influence the terms and conditions of his employment

- Quid pro quo harassment requires a tangible employment consequence of refusing to submit to a harasser's demands

- Under a quid pro quo harassment theory, the employer is strictly liable for the harassing behavior because the supervisor with the ability to carry out the tangible adverse employment action is considered to have been acting as an agent of the employer, who has provided them with authority to make employment decisions

c. *Exposure Depends on the Forum in which the Claim is Filed*

*Equal Employment Opportunity Commission (EEOC)*

- Cease and desist order by the EEOC
- Wages and benefits – front and back pay to Complainant
- Compensatory damages – pay victims for out of pocket expenses caused by the discrimination and compensate them for any emotional harm suffered
  - o There are limits on the amount of compensatory and punitive damages a person can recover. These limits vary

depending on the size of the employer. For employers with 15-100 employees, the limit is $50,000.

- Punitive damages
- Attorney's fees, expert witness fees, and court costs

### *State Division of Human Rights (SDHR)*

- Cease and desist order and the SDHR will require periodic reports from the employer, affirming that the employer is abiding by the cease and desist
- Hiring, reinstatement or upgrading of employees, with or without back pay,
- Awarding of compensatory damages
- Assessing civil fines and penalties $50,000 - $100,000
- Requiring a report of the manner of compliance.