# EXHIBIT G

9/16

Alden State Bank.

Sue Aldinger Investigation

Cherie Uebelhoer

- issues for a long time; not going to dwell
= w/ Bank 32 yrs; branch manager here 12 yrs. = Cherie
  → Nov 1982
- Sue has been here since Nov 1973

- a few yrs ago = C & S went to seminar in Syracuse
        - on the way home
        - S. gives C a pad ; I want you to read this;
    what some of the employees have said about you C
        - am I rude
        - do I do my work } etc.

            - upset - did not really say anything to her
                - ask a few people - "no, not what I said"
                                        - or
                            " taken out of context"

- recently - couple of yrs ago - head teller demoted (Rose)
        - met w/ employees to ask - what happened?
        - S. could Rose w/ be demoted and Melissa would be
    new teller
        - S. took Rose in a room by herself

A004734

- With personal matters, S often kept C out of it, too, not include her
- do not know what S said to Rose

- Problems with Rose. Going forward, did not agree with demotion
- Rose should not be here – C told S
- Eric's response was to tell Melissa to call EAP – EAP suggested not a good working relationship

- asked several times to remove Rose, put her at the other branch
- Eric was not open to that – did nothing about the situation
- months and months of conflict w/ Rose, written up + spoken to her
- took a long time, Rose settled down somewhat

- Rose said she was to be retrained
- Rose also poor

- Problem – did not do anything to resolve issue b/w Rose and Melissa, made it difficult for everyone, but nothing was done about that
- for relief from the experience ⊗

⊗ – Issues above C's authority – S will pull envelope apparently
– I never knew what to going on
Melissa
- But Thursday – issue not relief and heard Talley's building
– C took Mike aside, spoke to him alone
– S spreads lies
– all together, Melissa of course

*may address issues*

- S advised of 2 new employees — Emily and Kelsey

She said

"and Emily is + / made a point of it
pregnant"
— Not sure how long she will
be here or when she is
going to go out

- S told employees — Debbie Zimmerman... that she had duties
→ whoever was in charge of extension

— Checkonick — Kid (Note?)
- told of comment about going out and a big deal — sexual comment

- Most employees just blew it off
- one employee implied that the comment was sexual
→ DL Kristin to Harassing
→ or other employees talked in the Harassing

- to come over and pulled such employee in one by one,
  from the harassment policy, implied that they were accused
  of harassment
- seemed to be going on the complaint without conducting
  any investigation
- Kristin was taking more notes of what was going
  on, talked conversations inappropriate

- Sue came back following week - jobs could be on the line
  - Didn't they leave anything
  - accordance what leaving left jokes
- from the prior sexual harassment talk
  - employees felt uncomfortable
    - not fully investigated
    - just really looked into that much
  - unwarranted - didn't do anything
  - cannot control what the customer said
  - Sue was aggressive, demeaning, threatening

- issues that they have had to address w/ Sue
- on limited shift on Saturday; need help
- explained need to Sue
- Sue - "you (R) and Cherie will just have to create more customers"

- Sue could she would talk to Deb over a gr. age - never heard anything back

- but have told C not to go to Deb - "I am your supervisor" Report to me 1st
  - implies C cannot go above

- I came over and told can't could not view James like Deb - no confidence and issues - Deb did not go behind the teller line
- Deb never said anything - Kate asked Deb and he never said anything

[illegible stamp]

- Due said XYZ, not really Dick

- 2009 review - everything S wrote horible
  - C can't delegate to S and Dick

- talked to Dick - I do not think she knows what I do, she undermines me, not getting a fair review
  - he said he would look into it, never heard anything

- C thinks her reviews are based on S
  - Asks employees for feedback

- Harassed this winter - B/C lives far away
  - did not come to work - called S - "why isn't dave Andersen promoted?"
  - "you should make an effort to get to work"
  - C does not think her reviews warranted
  - S told Karen she had the came to work even though there was a driving ban - b/c Karen lives close

- Hired Nicole daughter, to write here
  - promoted here to decisions not posted, the only position posted was the last November (only -all positions should be posted)

A0004798

-Overall — not included in one-on-one discussions w/ employees,
even when issue ie an issue that C or K/even go to S. per
guidance.

II. Former employee — shorted a customer
     -knew she shorted customer
     -put $50 in reg. I obtained, went to customer and
          give her the $
               -C found out b/c customer said "That was so
                    nice"
     -Marianne, employee, why did you do that?
          -called S I want the employee to leave
     -C felt this was a terminable offense — S did not agree —
     and M home and let her think about it, S will talk to her
     -M took her advice, M decided to retire
          -S decided to have a retirement party for M — employees knew
     What had happened — event a bad message re. retirement —
     "we can do what we want"

II. -S mischaracterize personnel meetings
     -C is undermined
     -S says "the card XYZ -not true

II. -Cell phone issues — riled up employees "but nothing will come of that"
     -no consequences for employees violating cell phone policy

     -does not want to implement cell phone policy b/c hurts business

- Morale issues when things are not handled the way they shold be
- daughter, constant cell phone use?
- "I just feel I have no recourse"
- threatened / jokes
- no discrimination harassment

AO047440

- 9/16/14
  Kate Kodel

- Compliance and training specialist - April 2014 - report to Hilde - head of HR
  - Mortgage originator - at Alden 7 yrs.

- Kalina - Nick's best friend

(2) Tina Mazur - "5 girls"
  - Never say anything bad about Kalina"

Torie Hay - underwriter inside
  - Robin - Mortgage officer -

(3) - Debbie G. (not there, retired)
  - comeuse at Lancaster - 7 yrs. ago
  - Viva - bank pack medical bottle

  - Ice - Megan Biffert
  - Winter 2013 or 2014

(4) - general complaint
  - "hostile environment" - not discriminate

(5) Nortinne

(6) TES - pamphlet, scheduled plants appointment
  - no accommodation in place
  - "you just have an upset stomach" - ongoing comments the
  last two yrs.

A004741

⑦ Nicole is not coming in today

⑧ not going to do that, what is my max buyback price?

⑨ Tracy - head of CSRs - last summer - Anxiety
End talks last summer
↳ I guess is out again.
Whatever I got nerves too.
↳ she told her about other employees
medical issues.

⑩ Gwinnet (March/April) 2014
reports to Steve

⑪ Jessie Serge (man)
"he views changing schedules"

⑫ Tina Cutolo - think she would have the disciple
2012 or 2013

⑬ 2012
Sue - "why are you asking?
she has a customer?
you don't just interrupt?"

⑭ HMDA - home mortgage disclosure act - Dec 2013 - daughter's play
- Hide told her to send email and talk to Julie    Jan 2014    issues

A008742

(16) August 2014

(17) — grouping of current recruits
- Desc — marketing officer
  → do not get along

Employee 2 — Melissa
(17) talks w/ Rose
(18) Melissa missed promotn b/c vacatn; Nicole did not

Employee 3 — Joelle Munby (maturity?)

(19)

Employee 4 — Janice Hildebrand
(20) — S. told her not all positions are posted

Employee 5 — Julie Boveden (receptionist)

(21) complained to Kate, Robin, Hilde
- Gco told Robin that Nicole has to much to
  do for the
  → email                managers

(22) has Julie made a complaint? just to co-workers
                                   vs

(23) cell phone

A004743

Employee 6 - Emily Kaldl
- girl-in-law

(21) - at interview - did not want
   pregnancy to be public - she knew she
   - due her

(23) Matt
   shared an a scrubber - gave told Elaine
   - Dawn the proof opposite - 1 or 2, not sure

(26) "the book"
   - on roller line, name not given easily

(27) training bad - 1 or 2 weeks
   - gave failed manner

Employee 7 - Madalyn Krell
   - Jack's daughter - Kate's cousin

(25)
(24) What did Sue say

Employee 8 - Robin
(30) Sue calls other officers when they are home sick to check up
(31) privileged
(32)

Employee 9 - Dawn
(33) - (35)

Employee 10 - Jesse
   have on CERs outside bank note

A004744

---

- Complained to HR
- to vice about
- Sue
- not in charge
- Mike - ?
- etc. ?
- other drama?

- always been hostile, has gotten worse, especially worse since Nicole has been working (not working well)

- she is breathing heavy, mad - flipping out
- physically abusd - physically intimidating
- mad when even knowing the issue

A008745

9mm    9/26/2014  Nelissa Wojtanski

Head Teller/Teller/Proof Operator, This November 14 years

Lancaster                    X B6

—2 years ago—

Tried out for new position in bank (located at main office in Alden)
            1st in line, had to decline
            2nd in line position Kathy Cannella  [NOT NICOLE?]

Supervisor for position Rick Smith, asked her to switch vacation
so she couldn't do it
        b) Spoke w/ Rick said needed someone at that time
        b) Doesn't remember receiving ecull from Sue, interaction w/ Sue concerning position
Doesn't feel it was done unfairly

A lot of people involved in this   "can't always have things go way you want"

Wondering how her name got involved   "My story, isn't going to make a difference", doesn't know why at this time calling her. All issues in past

Don't want to share these stories

    investigation at the time of issues, would have been helpful
if this had happend                       but now water under bridge

Sue is her manager.
doesn't have any conflicts w/ her at this time    Doesn't want to get involved; manager was aware at the time things were happening, if investigation happened at that point would have helped

No concerns here recently.   Deals 1-on-1 w/ Sue.
Everything has been fine recently.

A004746

10/3/2014  Roy Joelle Manley    10:30 - 10:33

Told she was going to paid and Sue said she wouldn't,

looked into it, she got paid.
Issue resolved, no other issues.

10/3    10:36 Robin Mayer
        out of office until Mon.

10/3  Janice  Left v/m

10/3  Jesse Jerge        15 min
                Middle management - loan operations mgr
In Alden        oversee 3 people
office          also banking manager

        14 1/2 years @ bank

= Spoke w/board member concerning this (incident w/Sue)

concerns were not HR related but from
        Management/operations side

Hilde
Issue he brought attention to board - management issue
                        becoming
conduct that wasn't behaving of senior mgmt.

A004747

people now managing were people he was co-workers w/

HR manager has not done or said enough to help transition

→ Discussing bank promotions last Aug? ~~early July~~

Initial conversation   ← • Sue said she disagreed w/ his approach

Jesse told dup        • said all this customer service folks don't like you.

Steve Woodard          → didn't bother him a lot at time

about promotions

discussions, conversation w/ Sue followed

some communication breakdown

would expect Sue to do fact finding before accusing him of doing things incorrectly

Jesse made decision as to who was eligible for promotion.

Sue came to Jesse and said way he had done it was incorrect

Jesse's frustration is no questioning as to why along w/ he did things a certain way.

This was only
Verbal incident of this kind

Management doesn't always gel - but no other spec. issues.

story re: Sue
Only shared/ b/c someone suggested he shared it

A004748

10/3 Janice Hildebrand

customer service division / customer svc rep

Lancaster branch

Been @ bank 14 years

- Nothing about case has posted in 1 year

4 people allowed
When position, she already there

- No CSC posn and available
- job postings come up go down, no concerns about the
  way they're advertised
- She looks at them, would apply if she still are interested

— She not always contact person for positions

— Doesn't seem to have any info concerning Sixx
re: positions etc.

A004749

10/3 Dawn
8:45

Dawn called - will call 8:45 10/9

10/8 4:22 again left v/m

10/9 8:45 Dawn

working @ Bank Feb 2000
Alden    Lancaster
teller → head teller → Main branch (Alden)    @ 8 years
(Lancaster)
                        brun prex, process subpoenas,
                        process medicaid
                        runs updates

Heather Zugelli
                        saying she is
Her job →  Employee is useless - sick a lot - noticed discrepancies that
is to      bank could get fined for (this employee trained ___ when incurred
process                                                            D  in May 2006)
info/subpoenas
                        had a romantic relationship w/ supervisor
not properly            Thinks employee doesn't do things correctly b/c boy.
responding to           Debbie
subpoenas
where balance     Teller w/ MS, let her be a teller, constant mistakes,
not enough
to issue hold
on acct    employees
                        ↳ Debbie didn't have ability to do job, still left on teller line
                        ↳ ① had to deal w/ transactions done incorrectly
                        ↳ Sue said

                        - Debbie told Sue that ① was sabotaging
Sue seemed ←    Sue said "we know you wouldn't do that, so
to believe              not going to pursue it"
D's innocence
but D almost    "For awhile had Dawn pick up Debbie's work
wanted incident acstome + take them to Colleen or Sue. Wade ① Lee like on
wanted to be made and

A004750

A lot     at bank
         there that is issue
         [I mentioned sue] bad "she is not the worst", she "playing game"
         President of bank, flirting w/ tellers, tellers will get promoted
         + VP are brothers

Position will arise   Job will never get posted
Or job goes up + will be filled
         ▷ Had convo w/ sue w/ Hilde who said go to sue
         ▷ Hilde great
         ▷ Integrity
         ▷ never went to sue b/c
         ▷ Don't want to make waves

         Bank
Only hires friends/relatives

A004751

10/9  12:37 Robin Wayer
work in mortgage department/mortgage officers
20 years
Alden branch
oversee 1 person

works w/ a lot of women, I tend to ventilate on issues

- Don't have any complaints/concerns or problems w/ HR or mgmnt
- Any complaints she's heard have been venting. She knows who to go to if the complaints get beyond ordinary venting.

refer people to
She would "Mark Rinran if I don't want to go in house w/ complaints

10/15  Julie Osucha   5:25pm
         No v/m left (could not confirm answering
                                machine was hers)

10/15  Emily Koelbl
         V/m not set up

10/17 Emily Koebl

- As of recently no problems
- Doesn't know what changed
- Doesn't really communicate w/ Sue anymore

Pulled E into office
     Book where you can write name down if want to leave early
A004752

S said s didn't appreciate job.
S closed door said that E thinks she can do
whatever she wants b/c pres. daughter-in-law
E felt singled out.
Had nothing to do w/working

E started working — Book used by everyone on teller line, if you
at bank Aug 1            want to leave early b/c overstaffed
this year            — S accused E of having name in book 4x
Iden branch                or never left early piccos name out if leave
Teller                        early or speak to head teller
              — S said she was on line

Really haven't been problems since then
            for awhile
S left has been s
E told Dick she wouldn't be talked to like that, Sue followed
her in

E did not want to be alone w/S in room
S would say everyone feels the same way
made E uncomfortable

Sister-in-law Mar said E should write letter

E thinks things are better now
Ever Believes S comments were out of line
E still scared of S - she's a scary person

A004753

10/22 Julie O.

10/23 Julie O
 reached VM no msg left.

A004754

July 20, 2015

- Termination
  - w/ severance package

○ Agenda
○ Agreement
● Some additional response

Agreement:
- 6 months - $30K
- health insurance - w/ COBRA →
- retirement
- confidentiality

16
8
------
$50

A004755

**MEMORANDUM FROM**
Elizabeth Carlson
Direct Dial: 716.848.1530
ecarlson@hodgsonruss.com

Amanda DiSanto
Direct Dial: 646.218.7539
adisanto@hodgsonruss.com



**Hodgson Russ**
A T T O R N E Y S   •   L L P

ATTORNEY CLIENT PRIVILEGE—

Confidential Investigation

TO:       Hilde Neubauer
          Board of Directors
          Complaint File

FROM:     Elizabeth D. Carlson, Esq.
          Amanda S. DiSanto, Esq.

RE:       Investigation Report (S. Aldinger)

DATE:     October 22, 2014

## Statement of Allegations

In or about August 2014, Kate Koelbl ("Koelbl") approached Mark Rieman, Chairman of the
Audit Committee of Alden State Bank, with concerns about Alden State Bank's Branch
Administration/Human Resources Manager, Sue Aldinger ("Aldinger"). In connection with her
concerns, Koelbl provided a written list of alleged issues she personally experienced with
Aldinger, as well as issues allegedly experienced by other bank employees. A copy of Koelbl's
allegations are attached as EXHIBIT A. These issues included allegations of favoritism, issues
pertaining to employees' requests for sick days and/or time off, and allegations that Aldinger
behaved unprofessionally on several occasions (including informing employees that they were
disliked by others who worked at the Bank). Koelbl was interviewed on September 16, 2014,
during which she further explained her allegations and identified the employees listed in her
written list of allegations. The Bank also received a written complaint from Emily Koelbl
("Emily"), dated August 29, 2014 concerning Emily's interactions with Aldinger. A copy of
Emily's written complaint is attached as EXHIBIT B. Among the allegations in Emily's written
complaint was a statement that Aldinger "asked [Emily] about her pregnancy and how it would
affect [her] ability to work."

## Applicable Policies

Alden State Bank Code of Ethics for Senior Officers and Directors
Alden State Bank Employee Handbook

## Interviews

- September 16, 2014 – Kate Koelbl – Compliance and Training Specialist
- September 16, 2014 – Cherie M. Uebelhoer – Corporate Secretary/ Branch Manager – Lancaster Office
- September 26, 2014 – Melissa Kwiatowski – Head Teller
- October 3, 2014 – Joelle Manley – Teller
- October 3, 2014 – Jesse Jerge – Loan Operations Manager/Banking Manager
- October 3, 2014 – Janice Hildebrand – Customer Services Representative
- October 9, 2014 – Dawn Schimweg – Head Teller
- October 9, 2014 – Robin Mayer – Mortgage Officer
- October 17, 2014 – Emily Koelbl – Teller

## Summary of Interviews

Several employees of the bank noted that they experienced discrete issues with Aldinger in the past, but that recently, there have not been any issues. Past issues included Aldinger allegedly informing employees that they were disliked by other Bank employees, and/ or insinuating that employees were behaving inappropriately and that their jobs were at risk. Aldinger also questioned Emily Koelbl about her ability to work and her commitment to her job due to her pregnancy and because she is the Bank President's daughter-in-law. Out of the employees who submitted formal or informal complaints about Aldinger, two noted that they only shared these concerns at the suggestion of others. Notwithstanding that there do not appear to be current outstanding issues between Aldinger and specific employees, Aldinger was described by several employees as "intimidating" or "scary." Along those lines, employees expressed that Aldinger does not necessary respect their roles at the Bank.

There were also employees who expressed reluctance to disclose issues between employees and management (either because they did not want to "make waves" or because they felt that issues at the Bank were taken out of proportion), and others who indicated that the issues were not limited to Aldinger, but were more systematic. Other employees indicated that they did not have any concerns or complaints pertaining to Aldinger or management in general.

The more systematic concerns that were highlighted by bank employees included a sense that issues at the bank were not investigated, and that management did not address issues at the Bank when they arose. Such issues included management's reluctance to investigate teller errors, including errors that could result in Bank being subject to compliance fines. Specifically, one individual commented that subpoena requests are not always properly processed or responded to correctly.

There is also a sense among some individuals at the Bank that the Bank only hires and/or promotes friends and relatives of management. Some of the individuals interviewed indicated

A004757

that tellers will get promoted based on their friendships, or relationships with senior management. It appears that job opportunities are not posted consistently or regularly.

## Conclusion

There is insufficient evidence to substantiate a claim of harassment or discrimination. For employees, a finding of discrimination must be based upon a protected classification as defined by federal law. Federal and State anti-discrimination laws (as well as the Bank's anti-discrimination policy) protect employees against employment discrimination/harassment when it involves unfair treatment because of race, color, religion, sex, sexual orientation, national origin, age, disability, FMLA leave, workers compensation, military service, pregnancy, and genetic information. These laws protect against harassment by managers, coworkers, or others in your workplace, based upon these protected characteristics. Aldinger's statements to Kate Koelbl about some of her use of sick time and her statements to Emily Koelbl about her pregnancy are the only statements that even arguably could related to membership in a protected classification (arguably disability and pregnancy, respectively). However, Kate did not assert any adverse employment action because of her medical condition or use of sick leave, and Emily did not allege that she receive different treatment because she was pregnant. Accordingly, Aldinger's actions do not rise to the level of being unlawful discrimination/harassment and would likely not result in any liability for the Bank.

Certainly, there appears to be some tension between management and employees at the Bank, which includes, but is not limited to, issues with Aldinger's management style and demeanor. This tension may not create the ideal workplace for all employees, but it does not require any remedial action by the Bank to remedy unlawful discrimination/harassment. Nonetheless, based on the investigation, this report contains certain recommendations that may be worthwhile for effective operations and workplace harmony.

## Recommendations

- Require Aldinger to attend human resources/sensitivity refresher training.
- Consider anti-discrimination/harassment training for all employees, including all management staff.
- Assure all employees who participated in this investigation that they are protected against retaliation for the making of their complaints and/or participation in this investigation. Immediately investigate any allegations of retaliation.
- Ensure that there is a clear established procedure for filling open positions at the Bank and for granting promotions. Especially if there has been an effort to do so in the past (successfully or not), consider posting all jobs and circulate openings to Bank staff who may be eligible for the new position/promotion. However, whatever the procedure, ensure that it is adhered to in a consistent manner.

A004758

- Ensure that there is a clear procedure for reporting absences/illnesses to work, and for the Bank's program that allows tellers to leave work early if the Bank is overstaffed. Evaluate whether the current program for early-out offers operational efficiency and functions in a manner that will most likely be perceived by employees as fair and consistent for all tellers.
- Ensure that there is clarity about the organizational hierarchy at the Bank – i.e. clarify who reports to whom, and to whom each employee should address questions, concerns, or requests.

If you have any questions about the content of this report or the investigatory steps taken, please contact us immediately to discuss. Thank you.

000160.01394 Administrative 90145083/3

A004759