UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Ashley Osucha,

                              Plaintiff,

     v.

Alden State Bank *et al.*,

                             Defendants.

_____

**Decision and Order**

17-CV-1026 (LJV)

**I.    INTRODUCTION AND BACKGROUND**

From about 2008 until about 2017, plaintiff Ashley Osucha worked at defendant Alden State Bank (the "Bank") and held two job titles: Teller and Head Teller. In her complaint, plaintiff asserts that two of the Bank's officers, defendants Richard Koelbl and John Koelbl, sexually harassed her for several years and discriminated against her with respect to wages, promotions, and other available benefits. Plaintiff has claims against defendants under several statutes, including Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290–301. For the sake of brevity, familiarity with the case is otherwise presumed, including with the details of plaintiff's allegations of sexual harassment, a hostile work environment, and retaliation.

On February 26, 2020, plaintiff filed a motion to compel more detailed responses to various document requests and interrogatories that she had served. (Dkt. No. 45.) Because of the number of issues contained in the motion, the Court will address each component of the motion below. The Court held oral argument on the motion on May 13, 2020. (Dkt. No. 53.) For the reasons below, the Court grants plaintiff's motion in part, without costs to any party.

## II. BACKGROUND

### A. *Production of Documents*

The pending motion is the second motion to compel that plaintiff has filed in the past year. Plaintiff filed the first motion on June 11, 2019. (Dkt. No. 29.) On December 12, 2019, the Court issued a Decision and Order (the "Prior Order") that adjudicated the first motion. (Dkt. No. 42.) Among other issues addressed, the Court directed defendants to produce certain files created by Bank counsel Hodgson Russ LLP during an internal investigation of plaintiff's allegations.

How defendants responded to the Prior Order now is the focus of the pending motion to compel. According to plaintiff, defendants responded to the Prior Order by producing the following documents:

- Portions of documents that had been held by Hodgson Russ, LLP, relative to Ashley Osucha (10 pages total); Pages O003682–O003691.

- Personnel File of Jamie Hey; Pages O003692–O003982.

- Personnel File of Kaitlyn Chadbourne; Pages O003983–O004120.

- Personnel File of Julie Osucha; Pages O004121–O004333.

- Portions of documents that had been held by Hodgson Russ, LLP, relative to Carolyn Sure Aldinger.

(Dkt. No. 45-1 at 2.) Plaintiff considers this document production inadequate. In particular, plaintiff has submitted her own affidavit as well as the affidavit of one of defendants' former officials, Carolyn Sue Aldinger, to provide direct personal knowledge "that the following documents, at least at some point, existed":

- Carolyn Sue Aldinger's typed summaries of interviews with Plaintiff and Kaitlyn Chadbourne, created on or about August 13, 2015, which Carolyn Sue Aldinger gave to Hilde Neubauer, Esq., Vice President/Compliance Officer/General Counsel. *See* Osucha Aff. ¶ 5 (Dkt. 29-14); Aldinger Aff. ¶ 7 (Dkt. 29-12);

- Handwritten notes taken by Emina Poricanin, Esq., a Hodgson Russ, LLP, attorney during an August 20, 2015 interview of Carolyn Sue Aldinger.  *See* Aldinger Aff. ¶¶ 8-9 (Dkt. 29-12).

- Handwritten notes taken by Emina Poricanin, Esq., a Hodgson Russ, LLP, attorney during an August 21, 2015 interview of Plaintiff.  *See* Osucha Aff. ¶¶ 13-14 (Dkt. 29-14).

- Carolyn Sue Aldinger's memorandum concerning August 28, 2015 interviews of Jamie Hey and Julie Osucha, which Carolyn Sue Aldinger gave to Hilde Neubauer, Esq., Vice President/Compliance Officer/General Counsel.  *See* Aldinger Aff. ¶ 12 (Dkt. 29-12).

- A September 3, 2015 complaint of Jamie Hey prepared by Carolyn Sue Aldinger, which Carolyn Sue Aldinger gave to Hilde Neubauer, Esq., Vice President/Compliance Officer/General Counsel.  *See* Aldinger Aff. ¶ 13 (Dkt. 29-12).

- A September 11, 2015 memorandum concerning the complaint of Jamie Hey prepared by Carolyn Sue Aldinger, which Carolyn Sue Aldinger gave to Hilde Neubauer, Esq., Vice President/Compliance Officer/General Counsel.  *See* Aldinger Aff. ¶ 14 (Dkt. 29-12).

(*Id.* at 4–5.)  Plaintiff wants to know what happened to the above summaries, notes, and memoranda.  "If these notes no longer exist, Plaintiff is entitled to sworn statements from Defendants and their attorneys, Hodgson Russ, LLP, setting forth the chain of custody and circumstances surrounding the destruction of such notes.  This is necessary so that there is no misunderstanding relative to investigation-related documents, such as what happened to them— were they destroyed, were they given to someone, etc.  Once this has been established, Plaintiff will seek the appropriate relief for spoliation/destruction of evidence."  (*Id.* at 6–7.)

Defendants respond to plaintiff's concerns about the summaries, notes, and memoranda by answering those concerns partially but directly.  Defendants assert that they found the answer to plaintiff's concerns while defending a related case filed on the same day involving the same bank defendant, the same discovery, and nearly identical allegations by Aldinger—also a client of plaintiff's counsel.  *See generally Aldinger v. Alden State Bank*, WDNY Case No. 17-CV-1024 (GWC).  In the *Aldinger* case, defendants purportedly discovered "that Carolyn Sue Aldinger, who was the

3

Branch Administration / Human Resources room/ Security Officer at Alden State Bank during the times of the alleged sexual harassment in the instant matter before this Court, failed to keep and maintain many of the records, which are now being sought despite it being her job to keep and maintain such files.  It was discovered by Alden State Bank after Ms. Aldinger's termination that she did not keep records as required.  Ms. Aldinger's failure to keep and maintain records, as part of her job, is one of the main reasons that disclosure has been so difficult." (Dkt. No. 49 at 4–5.)

### B.  Interrogatories and Requests for Documents

In addition to the documents highlighted with bullet points above, plaintiff argues that a number of interrogatories and document requests either have not been addressed or have been addressed inadequately.  The Court will address each allegedly unresolved request below.

### III.  DISCUSSION
#### A.  Motions to Compel Generally

Taken together, Rules 33, 34, and 37 allow the Court to compel discovery including documents or other things.  "Motions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the district court.  This principle is in keeping with the traditional rule that a trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *Am. Sav. Bank, FSB v. UBS PaineWebber, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation and editorial marks and citations omitted).

#### B.  Summaries, Notes, and Memoranda

With respect to the documents highlighted in the bullet points above, the Court is having some trouble crafting a remedy.  Plaintiff's counsel's other client, Aldinger, generated much of the material and has hinted at what might have happened to it when she noted that the Bank's attorneys

4

or officials "told me that I should not have interviewed Jaimie Hey and Julie Osucha." (Dkt. No. 29-12 at 5.) Aldinger would appear to be in the best position to describe what happened to the material and to respond to defendants' allegations that she failed to keep and to maintain much of this material. At the same time, defendants appear not to have denied that the material existed at some point and might still exist; the Court knows only that lead defense counsel here has asserted—sincerely, as far as the Court can tell—that she has produced everything that was given to her. That lead defense counsel has produced everything given to her, and that the material in the bullet points remains unaccounted for, can be true at the same time, and therein lies the difficulty. *Cf. Buffalo Carpenters Pension Fund v. CKG Ceiling & Partition Co.*, 192 F.R.D. 95, 99 (W.D.N.Y. 2000) (no award of costs where defense counsel "was continually told that the missing documents could not be found [at another law firm]. The court does not fault [counsel] or defendants for the delay in producing the missing boxes of documents.").

An incremental approach to the problem should help for now. Within 30 days of this Decision and Order, each defendant[1] will submit to plaintiff either a sworn affidavit or a declaration made under 28 U.S.C. § 1746. Each affidavit/declaration will address the following: 1) whether the declarant denies that the documents mentioned in the bullet points above ever existed; 2) whether the declarant takes the position that Aldinger either took all of the documents with her upon her termination or destroyed them herself; 3) if the second point be answered in the negative then the declarant a) will confirm whether the declarant gave any direction to destroy the documents and b) will confirm all of the steps taken so far to locate the documents; and 4) if the declarant does not deny the existence of the documents but otherwise claims no knowledge of their whereabouts then

---

[1] In the case of Alden State Bank, the person who will do this for the institution will be someone who would satisfy the criteria of Rule 30(b)(6).

5

the declarant will answer the following question: "If you absolutely needed these documents as part of critical bank operations then whom would you ask and what would you do?" *Cf. Just v. Landmark Temporaries, Inc.*, No. 97 CIV. 4399 (SAS), 1998 WL 167328, at *1 (S.D.N.Y. Apr. 8, 1998) (court ordered "a sworn affidavit attesting to the fact that the handwritten notes were missing"). Once each affidavit/declaration is submitted, plaintiff will have to use depositions to find whatever other information might be necessary either to locate the documents or to lay the foundation for an adverse inference instruction. *Cf. De Espana v. Am. Bureau of Shipping*, No. 03 CIV.3573(LTS)RLE, 2007 WL 1686327, at *8 (S.D.N.Y. June 6, 2007) ("Typically, the evidence used to establish relevance of missing documents is deposition testimony.") (citation omitted).

After oral argument, defendants tried to anticipate what the Court might direct by volunteering a collection of affidavits that tracked the discussion at oral argument. (Dkt No. 54.) In response to today's Decision and Order, supplemental affidavits might be necessary, but any supplemental affidavits do not need to repeat information already provided that directly addresses the Court's directives.

### C.  Other Document Requests

Plaintiff has raised concerns about a number of document requests that she served on defendants and that defendants, in her view, answered inadequately. The Court briefly will address each request.

- *Request No. 5*: Plaintiff sought "All documents in Defendants' possession or control relating to Defendants' policy, procedure, and/or practice with respect to which ALDEN STATE BANK officers, directors, and/or employees are authorized to receive complaints of discrimination, hostile work environment, and/or retaliation, including but not limited to any communications made by Defendants to Plaintiff concerning to whom Plaintiff was to bring her complaints of discrimination, hostile

work environment and/or retaliation." (Dkt. No. 45-3 at 11.)  In response, defendants produced copies of termination policies, disciplinary procedures, retention policies, and the 2014 through 2018 versions of the employee handbook. (*Id.* at 16.)  Plaintiff now objects that defendants failed to specify which portions of the employee handbooks are responsive and that defendants did not produce older versions of the employee handbook dating back to the start of plaintiff's employment in 2008.  The objection is sustained in part.  According to the complaint, the alleged improper conduct began in 2011.  If defendants have the 2011 through 2013 versions of the employee handbook then those versions need to be produced.  The objection is otherwise overruled.  Versions of the employee handbook predating 2011 are not relevant to the allegations in the complaint.  *Cf. Old Republic Nat'l Title Ins. Co. v. Kensington Vanguard Nat'l Land Servs. of TX LLC*, No. 3:17-CV-1014-D, 2017 WL 8677358, at *3 (N.D. Tex. July 7, 2017) (ordering production of older handbooks that applied to the employees in question). Additionally, unless the employee handbooks contain no headings or pagination at all, they likely contain some kind of table of contents that would direct the reader to the procedure to be followed for making a complaint.  That direction would suffice under Rule 33(d).

- *Request No. 7*: Plaintiff sought "Any writing constituting any finding, administrative, and/or judicial finding or decision, including, without intending to limit, any finding of probable cause or reasonable cause to believe that Defendants discriminated, harassed, and/or retaliated against any employee on any basis including but not limited to sex, race, and/or age for the period from January 1, 1995 to the conclusion of this action." (Dkt. No. 45-3 at 12.)  Defendants responded that they "are not in possession of any administrative or judicial finding or decision." (*Id.*)  Plaintiff objects on two grounds: Defendants answered only about administrative and judicial findings but not about "any finding"; and defendants answered about what they have in their possession without addressing what documents might be in the possession of Bank counsel Hodgson Russ LLP.  The objection is overruled.  Plaintiff has not identified what sort of "finding" would have occurred apart from an administrative

(*e.g.*, Equal Employment Opportunity Commission) or judicial finding.  Plaintiff also has not identified what finding Hodgson Russ LLP would have that defendants would not have.  The better approach at this point would be to question defendants through depositions as to whether any arbitrator or adjudicative body ever found them liable for discrimination.

- *Request Nos. 9–10*: Plaintiff sought "[a]ll manuals, handbooks, policies, procedures, notebooks, notices, directives, communications to employees, and communications to and from the Board of Directors including but not limited to the Alden State Bank Branch Policy and Procedure Manual and all supervisors' manuals, notebooks, and/or other written materials referring or relating to Defendant's policies, procedures and/or programs, pertaining to" 52 categories of office practice including hiring, appraisal, training, ethics, evaluations, benefits, and even office gym usage.  (Dkt. No. 45-3 at 13–15.)  Plaintiff further sought "[a]ll memoranda or other documents regarding the training of any employees and/or members of the Board of Directors with regard to discrimination, harassment, hostile work environment, retaliation, and supervision, including but not limited to the dates of each training, notification of training, attendance list, syllabi, materials distributed, and evaluation forms."  (*Id.* at 16.)  Defendants responded by providing employee handbooks; termination policies; disciplinary procedures; online training records for 2015 through 2019; and affirmative action plans for 2009 through 2019.  (*Id.* at 16–17.)  Plaintiff objects that defendants have not confirmed by affidavit that they have no other responsive documents; that they failed to produce policies concerning employee benefits; and that they have not furnished training records for all members of the Board of Directors.  The objection is sustained in part.  Defendants will need to furnish documents that governed plaintiff's benefits while she worked there.  The objection is otherwise overruled.  Nowhere in the complaint does plaintiff allege that the Board of Directors actually knew of plaintiff's concerns or that defendants had an obligation to report all allegations to the Board of Directors.  Plaintiff may revisit this portion of the request if further discovery shows that defendants had an obligation to report all sexual-harassment allegations to the Board of Directors and

8

failed to do so, or if specific Directors had actual knowledge and chose not to take action. As for any objections about confirming via affidavit that all documents have been produced, defendants and defense counsel already are under the obligations set forth in Rule 26(e) and 26(g). Sanctions can be considered later if the need arises.

- *Request Nos. 14–17*: Plaintiff sought all documents that defendant submitted to the EEOC concerning her charge of discrimination. Defendants produced the position statement that they submitted to the EEOC, which included exhibits covering employee handbooks, organizational charts, policies and procedures, Aldinger's personnel file, compensation analysis results, and other documents. (Dkt. No. 45-3 at 9.) One exhibit to the position statement, an Exhibit O, was a bank compensation survey. Plaintiff apparently has not received this bank compensation survey and wants a copy. Defendants are directed to produce the bank compensation survey unless they intend to assert privilege. Plaintiff objects further that she has received one undated organizational chart but not other organizational charts. For the calendar years 2011 through 2016, defendants are directed to produce whatever information about their organizational structure would show everyone in the chain of command with respect to a complaint of sexual harassment or discrimination. Regarding plaintiff's request about wage and salary information, the objection is sustained in part. Defendants will produce whatever Wage and Salary Administration Program was in effect between 2011 and 2016. Defendants further will produce the name, age, experience at hiring, title at hiring, salary at hiring, and benefits at hiring for all hirings between 2011 and 2016. Plaintiff's objections for these requests are overruled in all other respects.

- *Request Nos. 26–32*: Plaintiff requested full documentation of plaintiff's performance reviews, salary history, raises, and benefits. (Dkt. No. 45-3 at 24.) Plaintiff further sought documentation related to affirmative action plans dating back to January 1, 1974 and related to employee handbooks dating back to January 1, 1995. (*Id.* at 25.) Additionally, plaintiff sought full schematic drawings of every floor of the bank building including the locations of the security cameras; plus documentation of the

retention policies for video recordings. (*Id.* at 24–25.) Defendants produced plaintiff's W-2 forms and personnel file along with employee handbooks as described above. Defendants objected to production of schematic drawings as irrelevant. Plaintiff now objects that defendants provided W-2 forms only for 2015 through 2017. Plaintiff also argues that the schematic drawings and the video retention policies are relevant to show where the allegedly offensive conduct occurred. The objections are sustained in part. If defendants have not yet done so then they must provide W-2 forms for each year of plaintiff's employment. The objection about other employment documents is overruled without prejudice; plaintiff will need to be more specific in the future about what is missing from her personnel file. The other objections are overruled. As noted above, plaintiff has been given a number of employee handbooks and affirmative action plans. Plaintiff has not shown the relevance of seeking documents dated decades before she ever worked with defendants. Plaintiff also has not shown the relevance of the schematic drawings. The alleged conduct either happened or did not. Providing details about the bank building down to the location of security cameras seems unlikely to change the preponderance of the evidence and, if it did, would compromise bank security to the point of putting proportionality in question.

- *Request Nos. 34–35*: Plaintiff requested all notes, minutes, agendas, attendance records, and other documents from the Board of Directors, the Board Compensation Committee, and the Board Audit Committee from 2008 through the present. Defendants objected to the requests in their entirety, and plaintiff believes in the relevance of the requests pertaining to how Bank officials handled complaints of discrimination and what training they received. The objection is sustained in part. To take a stepwise approach to establishing relevance and proportionality, defendants will produce the documents requested only to the extent that they mention plaintiff by name or clearly refer to plaintiff in all but name. The objections are overruled in all other respects.

- *Request Nos. 37–42*: Plaintiff requested full documentation of who owns stock in the Bank and how ownership has changed over time, with no time limitation.  (Dkt. No. 45-3 at 27.)  Plaintiff further requested full documentation of every life insurance plan or 401(k) plan issued, in some instances going as far back as 1995.  (*Id.* at 28.)  As part of the request, plaintiff wanted documents "including but not limited to the 401k Plan, selection of the 401k vendor, the 401k administrator(s), monitoring of 401k investments, complaints relative to the 401k vendor, communications between Defendant and any 401k vendor, any amendments, and payroll posting 401k reports." (*Id.*)  Defendants objected to any production, and the Court agrees.  Granular detail such as the selection of the 401(k) administrator might have occurred years before plaintiff ever worked at the Bank and would have nothing to do with whether defendants made lewd comments and pushed plaintiff out the door for complaining about them.  Plaintiff's objections are overruled without prejudice to revisiting these requests if plaintiff can lay some foundation for them that respects proportionality.

- *Request Nos. 44–46*: Plaintiff requested documentation about the value of free checking accounts to employees; about continuing education courses offered to employees; and about disability insurance offered to employees.  (Dkt. No. 45-3 at 29–30.)  Defendants objected to any production, and the Court agrees.  The complaint makes no mention at all of these very specific benefits, let alone any mention that defendants specifically denied them to plaintiff.  Plaintiff's actions are overruled without prejudice to revisiting these requests if plaintiff can lay some foundation for them that respects proportionality.

- *Request Nos. 51–52*: Plaintiff requested "[d]ocuments demonstrating the qualifications needed to be a member of the Alden State Bank Board of Directors, the names of all members of the Alden State Bank Board of Directors, the qualifications of each member of the Alden State Bank Board of Directors, and the period of time each member held such position as an Alden State Bank Board Director for the period from the inception of the Alden State Bank Board of Directors to the conclusion of

this action, including but not limited to description of the position of member of the Alden State Bank Board of Directors, Alden State Bank Board of Directors minutes, resumes of potential and new members of the Alden State Bank Board of Directors, press releases announcing new members of the Alden State Bank Board of Directors, determination by Alden State Bank Board of Directors to offer board position to potential board member; offer by Alden State Bank Board of Directors of board position to potential board member, and resignation (voluntary or involuntary) as a member of the Alden State Bank Board of Directors." (Dkt. No. 45-3 at 31–32.)  In response, defendants produced a biography of the newest Director; a list of current Directors; and a copy of the bank's bylaws.  Plaintiff objects that the documents produced do not show how the Bank goes about recruiting Directors and deeming them qualified.  Plaintiff's objections are overruled; the Court does not want to see this case sidetracked with mini-litigation over how the Bank should choose Directors.  *Cf. Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 525 (E.D. Cal. 2009) (document production restricted to the Board members accused in the complaint).  Plaintiff further sought "[a]ny and all documents showing proof of purchase for JOHN KOELBL's purchase of sponge candy in Spring 2015, including but not limited to [purchases] from Henry's Candy & Gifts, including but not limited to receipts, bank statements, credit card statements and/or expense statements."  (*Id.* at 32.)  Defendants objected to this request in its entirety.  The information sought does not bear directly on any element to be established before a jury and borders on extrinsic evidence in violation of Rule of Evidence 608(b).  Nonetheless, the Court will sustain plaintiff's objection in part.  If the individual defendant named made the purchase in question with a credit card then the defendant is directed to request an archived credit card statement from the credit card company.  Plaintiff's objection otherwise is overruled.

    Besides the document requests described above, plaintiff has lodged objections about how defendants responded to nearly all of her interrogatories.  After reviewing plaintiff's objections and the parties' motion papers, the Court finds that plaintiff has not made enough of a showing that

defendants violated the letter or the spirit of Rule 33(d). In nearly every instance, defendants furnished business records that would appear to allow plaintiff to find the necessary answers, as permitted under Rule 33(d). The Court overrules plaintiff's objections but without prejudice to explain in more detail how defendants violated Rule 33(d).

## IV.     CONCLUSION

Plaintiff's motion to compel (Dkt. No. 45) is granted in part and denied in part as explained above. No costs are awarded to any party. The Court's decision to deny portions of plaintiff's motion without prejudice must not be construed as a decision to delay depositions until the resolution of some future filing.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 9, 2020